T. C. HENDRYX v. WM. M. EVANS AND H. N. MOORE, Appellant.

**Title on Execution Sale Under Nebraska Law.** Under the laws 1  of Nebraska the title to real estate of a purchaser at an execution sale is not complete until the same is confirmed by the court.

**Same: WHEN DEED MAY ISSUE.** The purchaser at an execution 2  sale in Nebraska, where the sale has been confirmed by the

court, is entitled to a sheriff's deed at any time before the filing of a petition in error, notwithstanding the execution of a supersedeas bond, under section 590, Revised Statutes of Nebraska.

**Good Faith Purchaser.**    A creditor acquiring a sheriff's deed at a
3    lawful sale is a good faith purchaser.

**Release of Surety:**    EVIDENCE.    Where property of the principal
4    debtor has come under the control of a creditor, either by a voluntary act of the debtor or by legal process for the purpose of application to the debt, a voluntary relinquishment of such security will discharge a surety from liability to an extent corresponding with its value.    Evidence considered and held to release the surety under the above rule.

**Laws of Another State:**    OPINION OF ITS COURTS.    Courts of one
5    state will not take judicial notice of laws of another, but the opinions of a court of last resort in construing its statutes are entitled to weight.

*Appeal from Montgomery District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, MAY 12, 1903.

THE plaintiff demanded judgment on two promissory notes of $1,000 each, executed February 25, 1896, by William M. Evans and H. N. Moore, payable in one and two years, and bearing interest at the rate of six per cent. per annum. Moore only was notified, and in his answers admitted liability but for certain defenses interposed. After the evidence had been introduced, verdict was directed for the plaintiff. From judgment entered thereon the defendant appeals.—*Reversed.*

*C. E. Richards* and *P. W. Richards* for appellant.

*T. J. Hysham* and *Holmes & Morgan* for appellee.

LADD, J.—The defendant Moore signed the two notes in suit as surety for his son-in-law, Wm. M. Evans, and admits his liability thereon, unless released by proceedings in the courts of Nebraska against Evans. Plaintiff

began an action against the latter in the district court of
Sarpy county of that state, January 13, 1898, for the
amount owing on these notes, aided by a writ of attach-
ment, which was levied upon Evan's real estate.   Evans
filed answer, and, upon trial, judgment was rendered
against both, November 18th of the same year, including
an order sustaining the levy of the writ of attachment and
directing a sale of the property.   No notice was served on
Moore, and the judgment as to him was void for want of
jurisdiction.   Special execution issued, and said property
was sold by the sheriff to the plaintiff, January 30, 1899.
He thereupon applied to the court for a confirmation of
the sale, in accordance with the practice of that state,
February 27, and the court entered the required order of
confirmation March 15th, notwithstanding objections in-
terposed by Evans, who filed a supersedeas bond April 3d,
and perfected his appeal therefrom.   Entirely without his
authority, Moore's name was attached to the petition in
error and the supersedeas bond.   The twelfth error relied
on, in effect that the affidavit of publication of notice of
sale was insufficient, was confessed by plaintiff in Septem-
ber, 1900, and on his motion the order of confirmation was
reversed, and in pursuance thereof the sale set aside by
the district court, December 17th following.   Long prior
to this, February 15, 1896, Evans had executed a mortgage
on the real estate attached to one Phillips, securing the
payment to him of $4,000, which mortgage was not recorded
until October 24, 1899.   Evans was solvent in 1898, but
insolvent at the beginning of the present action.

   The appellant insists that, by the levy upon and sale
of the real estate, plaintiff acquired security for the satis-
faction of the notes, that this was lost by his failure to
promptly procure and record a sheriff's deed,
thereby obtaining title freed from the lien
of the Phillips mortgage, and that because of
such want of diligence the defendant as surety is relieved

1.  TITLE on ex-
ecution sale
under Ne-
braska law.

from liability, save for a small sum not covered by the sale. Under the laws of Nebraska, the sale of real estate by the sheriff under execution is not regarded as complete until confirmed by the court, and an appeal is allowed from the order of confirmation. See section 498, page 478, Revised Statutes, Neb. Said the Supreme Court of that state in *State Bank v. Green*, 10 Neb. 130 (4 N. W. Rep. 942): "Under our law governing sales of real property under execution, the title of the purchaser depends entirely upon the sale being finally confirmed by the court under whose process it was made, and until this was done the rights of the execution debtor are not certainly divested." This was cited with approval in *Lamb v. Shermvn*, 19 Neb. 687 (28 N. W. Rep. 319). In *State v. Green*, 8 Neb. 299 (1 N. W. Rep. 210), in holding orders of confirmation appealable, it was said that "no title passes by the sale until it is confirmed, and the same rule applies to the sales under execution." In *Yeazel v. White*, 40 Neb. 432 (58 N. W. Rep. 1020, 24 L. R. A. 449), the court, after reviewing previous decisions, concluded that "the legal title of Einspahr to the land sold was not divested, nor did Yeazel acquire the legal title to such real estate, until the delivery to him of the sheriff's conveyance made in pursuance of the order of confirmation of sale." As said by Judge Brewer in *Young v. Deputron* (C. C.) 37 Fed. Rep. 46, approved in the same case on appeal in *Deputron v. Young*, 134 U. S. 241 (10 Sup. Ct. Rep. 539, 33 L. Ed. 923): "It is settled law of Nebraska that the title of a purchaser at an execution sale depends not alone upon his bid or payment of the purchase money, but upon the confirmation of the court of the sale." See, also *Allen v. Elderkin*, 62 Wis. 627 (22 N. W. Rep. 842), and *McBain v. McBain*, 15 Ohio St. 337 (86 Am. Dec. 478), cited in the opinions mentioned.

This sale was confirmed in the district court March 15, 1899, and at that time the plaintiff was entitled to a

sheriff's deed which would have conveyed to him the judg-

**2. SAME: when deed may issue.** ment defendant's interest in the land, and "vested in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the party at or after the time when such land and tenements became liable to the satisfaction of the judgment." Sections 499, 500, page 478, Revised Statutes, Nebraska. The plaintiff was not prevented from obtaining this deed by the filing of the supersedeas bond, for the statute of Nebraska provides that, before such undertaking shall operate to stay execution of the judgment or order, a petition in error must be filed in the appellate court. Section 590, page 498, Revised Statutes, Nebraska. The petition was not filed until October 12, 1899. Until that time he was at liberty to procure the deed and place it upon record, thereby acquiring title freed from the lien of Phillips, and subject only to the contingency of a reversal of the order of confirmation by the Supreme Court; for the rule prevailing in Nebraska is that a prior unrecorded deed or mortgage, executed in good faith and for a valuable consideration, will take precedence of a conveyance based on a sheriff's sale made under attachment or execution, if recorded before evidence of title based on the judicial sale is recorded; otherwise, if recorded afterwards. *Sheasley v. Keens*, 48 Neb. 57 (66 N. W. Rep. 1010); and cases cited. This necessarily follows from the wording of section 4108 of the Compiled Statutes: "All deeds, mortgages and other instruments in writing which are required to be recorded, shall take effect and be in force from and after the time of delivering the same to register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice, whose deeds, mortgages and other instruments shall be first recorded; provided that such

deeds, mortgages or instruments shall be valid between the parties.'' The fact that an appeal may be taken from the order of confirmation can make no difference. It continues in full force, notwithstanding the appeal, until reversed. *Creighton v. Keith*, 50 Neb. 810 (70 N. W. Rep. 407); *Watson v. Richardson*, 110 Iowa, 698. And upon affirmance the order stands ratified and confirmed as originally entered, and the rights of the parties necessarily relate back to that time.

That a creditor acquiring a sheriff's deed in pursuance of a lawfully conducted sale on a valid judgment is a good-faith purchaser for value and entitled to protection is not

3. **Good faith purchaser.** open to question in this state (*Gower v. Doheney*, 33 Iowa, 36), and we think the same rule finds approval in *Sheasley v. Keens, supra,* and like decisions in Nebraska. Upon reversal without fault of the creditor he would doubtless not be entitled to protection, and a new sale had, the same as though none had preceded it. But the reversal was of the plaintiff's procurement. As he failed to take, and record the sheriff's deed to which he was entiled, the recording of Phillips' mortgage, October 24, 1899, gave the latter priority over his judgment, and manifestly this is what led him to procure the *pro forma* order of the reversal in the Supreme Court by confessing an error in the order, presumed to have been correct, which he knew, and the transcript conclusively demonstrated, did not exist. The very purpose was to shield him from the result of his delinquency in not perfecting title to the land before the recording of the Phillips mortgage. In these circumstances, neither the reversal nor subsequent order of the district court of Sarpy county in pursuance thereof setting aside the sale afford any protection against the charge of negligence. As contended, the lien of judgment continued as before, but subject to that of Phillips' mortgage, the *bona fides* of which was not put in issue. To the extent of the amount due

thereon, exceeding the sum owing on these notes, then, the security acquired by the levy on the real estate has been impaired. The record indicates this could have been avoided by the procurement and recording of the sheriff's deed.

Was the omission to do so such negligence as will relieve defendant from laibility to the extent of the consequent loss? The plaintiff could not have been deceived by the judgment entered against Moore, for no property of his was attached, and the service of notice was by publication. The judgment was therefore void upon its face. Not having been a party to the judgment against Evans, and having made no objection to the confirmation of the sale, Moore was a stranger to the record, and not in a situation to appeal. So that, while Hendryx may not have known that the filing of the petition in error was wholly without authority, he did know that Moore was not a proper party to the appeal, and had no right to be heard. In these circumstances, his connection with the record furnished Hendryx no excuse for not perfecting his title to the land under the sale. It must be held that, in omitting to procure and to record the sheriff's deed within the nearly seven months that this might have been done, the plaintiff was negligent, and did not properly protect the security he had acquired through the process of the court. When property of the principal has come under the control of the creditor, either by voluntary act of the debtor or by process sued out by the creditor for the purpose of being applied on the debt, a voluntary relinquishment thereof will discharge the security to an extent corresponding with its value. *City of Maquoketa v. Willey*, 35 Iowa, 328. The plaintiff was not bound to put his notes in judgment against Evans, nor, having done so, was he required to cause execution to be levied. After having done all this, however, he cannot be permitted to surrender any security acquired to the detri-

*1. RELEASE of surety: evidence.*

ment of the surety without the latter's consent. His duty is to exercise active diligence in preserving liens, but not in acquiring them, unless his contract so exacts. This much is settled by the decision last cited, notwithstanding the conflict of authorities elsewhere. To the same effect, see *Sherraden v. Parker*, 24 Iowa, 28; *Whitehouse v. American Surety Co.*, 117 Iowa, 328, and *Read v. American Surety Co.*, 117 Iowa, 591.

This is on the theory that the creditor thereupon becomes invested with the obligations of a trustee in respect to the lien, and any neglect which results in depriving the surety of the benefits of the security thus acquired and of the advantage of subrogation thereto will, to the extent of the loss, relieve him from liability. For the surety is entitled, upon the payment of the debt, to be subrogated to the rights of the creditor in all securities acquired by him at any time for the satisfaction thereof, and, if this right is rendered unavailing by the negligent omission or commission of some act of the creditor which was essential to the protection of such securities, he, rather than the surety, should suffer the loss. The law doubtless permits the creditor to remain passive when his inaction does not impair the security, or when the circumstances are such that the surety may protect himself; but, when something is essential to be done by him in order to save or preserve the security, the better opinion is that diligence should be exacted. The distinction is illustrated by the rule holding the creditor to the duty of preserving the priority of a mortgage or other lien by filing it for record. *Burr v. Boyer*, 2 Neb. 265; *State Bank v. Bartle*, 114 Mo. 276 (21 S. W. Rep. 816); *Sullivan v. State*, 59 Ark. 47 (26 S. W. Rep. 194). This is on the ground that the instrument evidencing the lien is within the creditor's sole custody and control, and no opportunity open to the surety for his protection. But, after recording, the creditor is under no obligation to foreclose, for the surety may pay the debt,

and thereby be subrogated to the rights of the creditor, and prosecute foreclosure proceedings himself. *Fuller v. Tomlinson*, 58 Iowa, 111; *Grisard v. Hinson*, 50 Ark. 229 (6 S. W. Rep. 906). The surety upon the maturity of the debt ought to pay it, and if he neglect to do so, thereby putting himself in a position to protect his own interests, he is quite as much at fault as the creditor in failing to enforce the claim. To relieve the surety under such cir- cumstances would be like allowing a man to profit by his own wrong. Stearns on Suretyship, section 99. In *Horse- man v. Todhunter*, 12 Iowa, 230, an instruction to the effect that withholding a mortgage from record was a fraud on the surety was declared erroneous. Manifestly, such omission did not amount to fraud as between the parties, but may have constituted such negligence as ought to have discharged the surety—a point apparently not raised by the pleadings, and certainly not in argument. In *Schroeppell v. Shaw*, 3 N. Y. 457, an omission of an act necessary to render an assignment effectual was held to discharge the surety. Here there was practically no trouble or expense, such as is sometimes said to excuse the passive delay of the creditor. Taking and recording the sheriff's deed was essential to the protection of the lien acquired. It was beyond the power of the surety, and could have been accomplished by no one save the plaintiff. This duty, we think, devolved upon him. By omitting it, the lien of his judgment was postponed to that of the Phillips mortgage, otherwise it would have been satisfied in the sum realized from the sale. Presumably the land was worth the amount of the bid, and, had the deed been procured and recorded within a reasonable time, he would have acquired a clear title thereunder. This being true, defendant's obligation would have been satisfied to the extent of the amount realized. We think that owing to plaintiff's want of diligence, through which the priority of

his lien was lost, the same result should follow, and' that liability of defendant on the notes must to that extent be held to have been discharged.

We have not deemed it necessary to set out all the statutes referred to and conceded to have been .in force in Nebraska, as their proper construction does not seem to be seriously questioned. Counsel on both sides have cited and relied on decisions of that state, without proof. While courts of one state will not take judicial notice of the laws of another, written or unwritten, the opinions of the court of last resort of another in construing its statutes may properly be referred to, and are entitled to very great weight. *Eastern Building & Loan Ass'n v. Williamson*, 189 U. S. 122 (47 L. Ed. 735). These decisions are followed in construing the statutes because of the apparent acquiescence of counsel, as well as our own concurrence, in their soundness. —REVERSED.

5. LAWS of another state; opinions of its courts.