CHARLES R. LEWIS, Appellant, v. PAUL BROWN REALTY & INVESTMENT COMPANY, a Corporation.—No. 39553.—193 S. W. (2d) 13.

Division One, February 11, 1946.

Rehearing Denied, March 11, 1946.

*Oliver T. Remmers* and *Herbert F. Hahn* for appellant.

*Forest P. Tralles, Fred J. Hoffmeister* and *C. Kenneth Thies* for respondent.

DALTON, C.—Action for damages for negligent failure to record a lease. Plaintiff, a surety, claims to have lost the right of subrogation to defendant's rights and to have been damaged thereby. The parties waived a jury and submitted the cause to the court upon an agreed statement of facts and evidence. The court found the issues for defendant and entered judgment. Plaintiff has appealed.

The defendant leased certain described premises to the Smith Candy Company "for the term of five years and two months, beginning on the first day of November 1935, and ending on the 31st day of December 1940, for a total minimum or guaranteed rental of Forty-Nine Thousand Six Hundred Dollars ($49,600.00), payable in equal monthly installments of $800.00," and the lessee further agreed to pay for water and electricity used on the premises. The lease provided that "all the property and furniture of said lessee situate upon said premises during said lease, shall be and is hereby bound for the rent herein reserved and for the fulfillment of all the covenants of this lease, and a lien is hereby created thereon in favor of said lessor for such rents and fulfillment of said covenants." In case of default, the lease provided that "the lessor may declare this lease terminated . . . and the lessor may hold the demised premises freed from any further liability on the part of the lessor hereunder, or the lessor may enter the leased premises as aforesaid and, as the agent of the lessee, re-let the same for the balance of the term of this lease and may receive the rent therefor, applying the same, first, to the payment of the expense of such re-entering and re-letting, and then to the payment of rent due and to become due by these presents, the lessee agreeing hereby to pay and deficiency."

Contemporaneous with the execution of the said lease and in consideration of the execution thereof by defendant, plaintiff entered into an escrow agreement with defendant and deposited with an escrow, agent securities to the value of $4800. The escrow agreement, in part, provided: "The lease above referred to, for which such security is deposited, expires December 31, 1940, and during the entire term thereof such security shall remain on deposit for the benefit of lessor to protect lessor against any defaults by lessee in the payment of rent or in the performance of other covenants by lessee to be performed." The agreement further provided for the delivery of said $4800 to defendant in payment of "defaulted rent or to the correction of lessee's other breach or breaches of covenant," but, if not so required, that "upon the expiration of said lease, with all the covenants fully performed by lessee," defendant should "certify to the full performance by lessee of all the covenants of said lease, and the cash or securities so deposited" should be returned by the escrow agent to plaintiff.

On August 9, 1938, the lease was recorded by defendant at plaintiff's request. Prior to that date plaintiff did not know that the lease was not recorded. From time to time, beginning on May 31, 1938, the plaintiff was notified by defendant of the lessee's defaults in the payment of rents and charges under the lease and plaintiff sought and received extensions of time for the payment of such delinquent rents and charges. On March 1, 1939 there was due defendant under the lease the sum of $5520.11, "all of which had accrued and become due after June 1, 1938." The defaults continued and, on March 24, 1939, defendant requested and received of the escrow agent the sum of $4800 deposited by plaintiff under the escrow agreement. At that time all agreements for extensions of time had expired.

When the lease was executed and the Smith Candy Company commenced business, it owed no debts to merchandise creditors, but on August 1, 1938 (shortly before the lease was recorded), it owed defendant $3761.36 delinquent rent and, further, owed general creditors approximately $10,000.00.

On April 3rd, 1939, after plaintiff's $4800.00 had been applied on the lessee's rent account, $1696.79 was still due defendant. On April 5, 1939, defendant advised the lessee that, unless the defaults were made good within ten days, it would "proceed to declare said lease terminated" and we infer from statements in other exhibits that the lease was in fact so terminated. On April 22, 1939, the lessee filed a voluntary petition in bankruptcy and was adjudged a bankrupt. Thereafter, defendant filed a claim in the bankruptcy court for "unpaid rent ▮ and electricity of $1894.57" and sought a lien on the lessee's property and furniture under the terms of its lease. The bankruptcy court denied the lien, but the claim was allowed as the claim of a general creditor. Plaintiff, thereafter, filed a reclamation petition based on plaintiff's guaranty contract and the alleged right of subrogation to the rights of defendant under its lease. The petition was denied, but plaintiff collected $363.78 on his "general claim of $4800."

On June 13, 1939, the trustee of the Smith Candy Company, Inc., a bankrupt, sold the furniture and fixtures of the Smith Candy Company for $3250.00, however, the value on that date would have been in excess of $6000.00 "on a going-concern valuation."

▮ As stated, the cause was submitted to the court on an agreed statement of facts and evidence, including some 19 exhibits. No declarations of law were requested or given. The trial court did not indicate the theory upon which it acted in finding for defendant. The stipulation of the parties did not undertake to determine the ultimate facts, but rather submitted the cause upon admitted evidentiary facts with the ultimate facts for the determination of the court. Under the Civil Code, Laws of Missouri, 1943, p. 387, sec. 114(d), we "review the

case upon both the law and the evidence as in suits of an equitable nature.''

Appellant (plaintiff) contends that the finding and judgment of the court was for the wrong party and contrary to the facts set out in the agreed statement of facts. Appellant insists (1) that the provision of the lease reserving a lien upon the lessee's property and furniture for unpaid rent and for the fulfillment of all covenants of the lease was in legal effect a chattel mortgage (Matz v. Miami Club Restaurant (Mo. App.), 127 S. W. (2d) 738); (2) that ''it was defendant's duty to record the lease with the chattel mortgage clause to preserve the security for one secondarily liable''; (3) that ''plaintiff was subrogated to all lien rights defendant had in (the) lease''; and (4) that defendant having failed to record the lease and preserve the security (lien on property and furniture) for the benefit of plaintiff (surety), the plaintiff (surety) was discharged from his suretyship by reason of the damages suffered and, the defendant having obtained the $4800 from the escrow agent, the plaintiff is now entitled to recover in this proceeding for all damages suffered by reason of defendant's negligence, towit, for the loss of the $4800 and for attorney's fees and incidental expenses paid in the sum of $1500, together with interest on the total sum from June 13, 1939. Appellant claims $8433.08 to the date of the adverse judgment.

Respondent, on the other hand, contends (1) that the ''defendant-creditor was a loser under the lease in the sum of $18,096.79 after deducting the plaintiff surety's guarantee fund of $4800'' and ''lost far more . . . than any recovery which may have been made on furniture and fixtures in any event''; (2) that the ''plaintiff is estopped to complain when his own conduct in securing extensions of time occasioned loss to defendant in excess of plaintiff's guaranty''; and (3) that the appellant was not required ''to perform any affirmative act for the purpose of protecting or assisting the surety'' and had no duty to record the lease.

▮ A review of the applicable rules of law, relied upon by appellant, is required. ''If one secondarily liable pays a debt, he is entitled, as against the debtor who is primarily liable (there being no other facts in the case contra), to be subrogated to all the rights of the creditor, including securities held by him, and this, although there is no express agreement for subrogation; the right arises by operation of law.'' Loewenstein v. Queen Ins. Co., 227 Mo. 100, 117, 127 S. W. 72; McKenzie v. Missouri Stables, 225 Mo. App. 64, 34 S. W. (2d) 136; Netherton v. Farmers Exchange Bank of Gallatin, 228 Mo. App. 296, 63 S. W. (2d) 156.

▮ While the particular authority is not relied upon by appellant, another rule relied upon is well stated in 50 Am. Jur., Suretyship, sec. 118, p. 982, as follows: ''The collateral security taken by a creditor may require some act on the part of the creditor to make it a

valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged to the extent of his loss or injury. Thus, it is quite generally agreed that where collateral security is given in the form of a mortgage, deed of trust, or similar instrument, and the statute requires it to be filed or recorded in order to make it valid against innocent purchasers, ██ it is the duty of the creditor to see that the instrument is properly filed or recorded; and if he negligently fails to act, the surety will be discharged to the extent of the loss thereby occasioned, or, it may be, completely discharged. On the other hand, there is some authority to the effect that a surety is not released by the failure of the creditor to file for record a mortgage held as collateral security, . . .

In support of the majority rule above stated see American Law Institute's Restatement of the Law of Security, sec. 132, p. 358; Brandt on Suretyship, 3rd Edition, Vol. 1, sec. 505; The State Bank of St. Louis v. Bartle, 114 Mo. 276, 280, 21 S. W. 816; People's Bank v. Baker (Mo. App.), 193 S. W. 632, 633; Peyton v. Ethridge, 216 Mo. App. 265, 262 S. W. 69; Hendryx v. Evans, 120 Iowa, 310, 94 N. W. 853, 855; 50 C. J. 161, sec. 262.

██ Appellant's theory is that the lien provision of the lease gave defendant "perfectly good security" to protect it against loss for all defaults accruing in the non-performance of the lease covenants; and that "the defendant by its negligence in failing to record the lease lost that security and plaintiff suffered loss as a result thereof." Appellant argues "that had defendant promptly recorded the lease, it would have been amply protected and plaintiff as surety would have been reimbursed"; that if defendant had recorded its lease, "it would have recovered its loss of rent by sale of property under the chattel mortgage provision of the lease; and (that) plaintiff under his right of subrogation would have recovered his $4800." Appellant further says that "if the surety is relieved of his obligation because of the lessor's negligence, he can with equal force recover his loss theretofore suffered through lessor's negligence." It is apparent from appellant's argument that he assumes the value of the lessee's furniture and fixtures, if the lien of the lease had been preserved, would have been entirely adequate to have discharged all of the lessee's obligations under the lease; and that appellant's obligation as surety would have been fully discharged and his $4800 released.

The agreed statement of facts shows that the lease provided for "a total minimum or guaranteed rental of $49,600.00" for the lease period, ending December 31, 1940. When the lessee was adjudged a bankrupt, on April 22, 1939, the amount of delinquent rents and charges under the lease, after the appellant's escrow deposit of $4800 had been applied to the default, was $1894.57, or a total delinquency of $6694.57, exclusive of plaintiff's deposit. At that time the unex-

pired term of the lease was 20 months, at a rental of $800 per month. Appellant's escrow agreement expressly provided that appellant's $4800 should, during the entire term of the lease, "remain on deposit for the benefit of lessor to protect lessor against any defaults by lessee in payment of rent or in the performance of other covenants by lessee to be performed." The deposit was not to be returned until all covenants had been fully performed. In the event of defaults it could be applied "to the payment of defaulted rent, or to the correction of lessee's 'other breach, or breaches of covenant." Appellant was not released from his obligation as surety by reason of the bankruptcy of the lessee, and we must determine whether appellant was injured by the loss of the lien provided by the terms of the lease. Outside of the record, appellant contends that respondent obtained rent salvage by renting the premises during the unexpired term, but respondent contends the property was vacant for sixteen and one-half months. We disregard both contentions, because there is no evidence in the record of rent salvage or other facts minimizing the damage to respondent by reason of the breach of the lease covenants. In view of the bankruptcy of the lessee, the termination of the lease and the absence of evidence of rent salvage, we must assume that no further rent was paid during the remainder of the term. In any event, the burden was upon plaintiff-appellant to show rent salvage, if any, and other facts limiting the extent of the obligations secured by the deposit and to show that appellant was injured by the loss of the lien on furniture and fixtures as provided by the lease.

If we assume that security for the performance of the lease covenants in the sum of $6000 (the suggested "going-concern valuation" of the furniture and fixtures of the lessee on June 13, 1939) was in fact lost by the negligence of the lessor in not recording the lease, still there was no showing by appellant, that the loss and damage to the lessor (respondent) by reason of the breach of the lease covenants was less than the total value of the furniture and fixtures plus the total amount of appellant's escrow deposit. Under the terms of the ██ lease and the escrow agreement, the lessor (respondent) was entitled to take and hold both the lien on furniture and fixtures and appellant surety's deposit if both were required to cover defaults under the lease covenants. If all the security provided by the lease had been preserved and applied to the discharge of the obligations of the lessee (principal) under the lease, the surety's additional deposit of $4800 as security would not have been sufficient to discharge the balance of the obligation in full. Appellant appears to assume that whatever sum might have been obtained from the furniture and fixtures would have applied to the direct reduction of appellant surety's obligation under his guaranty, but any sum derived from the sale of the furniture and fixtures would have been applied to the defaults under the lease and appellant's guaranty fund would have been applied to the payment of

the balance of the defaults remaining after the proceeds of the furniture and fixtures had been so applied.

Since it does not appear from the evidence that appellant's entire deposit would not have been required in any event to discharge the defaults under the lease, and regardless of the application of the full value of the furniture and fixtures to these defaults, appellant was in nowise injured by the loss of such security. Saline County v. Buie, 65 Mo. 63; Lafayette County v. Hixon, 69 Mo. 581, 583; Patton v. Cooper, 84 Mo. App. 427.

There is a further reason that the judgment must be affirmed. While the evidence shows that the lessee possessed certain furniture and fixtures at the date of the bankruptcy and that this property was subsequently sold for $3250.00, there was no showing that this property was acquired by the lessee prior to the date the lease was recorded or prior to the time that obligations to general creditors were incurred. Nor does the evidence show the value of any furniture or fixtures possessed by the lessee prior to the recording of the lease or the incurring of lessee's obligations to general creditors. The record does show a conditional sales contract from a prior tenant of the building purporting to transfer furniture, fixtures and other property in the building to one W. M. Smith for an alleged consideration of $15,000, of which $8000.00 was to be paid in deferred payments and $7000 in stock of a corporation to be organized, but there is no evidence of the discharge of these secured obligations or of the transfer of this particular property to the Smith Candy Company.

We think the record clearly fails to show that appellant suffered any loss or damage by reason of the failure of respondent to record the lease.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.