## Charles E. Jennison and Another v. Thomas A. Parker.

Where, in plaintiff's absence, his clerk received of his debtor a draft, and accepted the same to be applied, when paid, on the debtor's account, and after the draft fell due the plaintiff wrote the debtor respecting it, not repudiating the act of the clerk, and, on subsequently suing the debtor, offered to return the unpaid draft,—*Held*, that these facts furnished evidence from which a jury might infer a ratification by plaintiff of the acts of the clerk.

Where a party receives negotiable paper from his debtor, with the debtor's indorsement, as collateral security for his demand, and not as agent merely, it is his duty to present the same for payment when due, and take the proper steps to charge the debtor as indorser; and failing to do this, he makes the paper his own.

*Heard October 6th. Decided November 9th.*

Error to Wayne Circuit.

Parker brought assumpsit in the court below, against plaintiffs in error, declaring upon the common counts, and upon a note for $532,22 made by defendants September 1st, 1856, due, with interest, on demand.

Defendants pleaded the general issue, and gave notice of set-off, with further notice that they would "show that the plaintiff received of the defendants, as part payment of the note copied in said declaration, a certain draft drawn by Frost & Bradley on Charles Bradley for $120, 36, payable at twenty days after sight, dated July 19th, 1857, and plaintiff has converted the same to his own use," &c.

On the trial before a jury, plaintiff introduced in evidence and read to the jury the note set out in the declaration, and evidence was also introduced showing an account between the parties, upon which there was claimed $139 18-100, being the only demands sought to be recovered. And thereupon plaintiff rested.

A witness was then introduced on behalf of defendants who, being sworn, testified that he was in the employment of the plaintiff as his clerk, in July and August, 1857; that plaintiff was then doing business in the city of Detroit; that the defendants enclosed to plaintiff a draft drawn by Frost & Bradley of Saginaw, on Charles Bradley of the city of Detroit, for $120,36, payable to the order of defendants, and by them endorsed to the plaintiff, dated July 20th, 1857, payable twenty days after sight, and which was afterwards accepted, and was to be applied, if paid, to the credit of defendants; and said witness testified that said draft had never been paid: That deponent wrote in plaintiff's name the two letters to defendants first given below; that the third letter copied below is in the hand writing of the plaintiff; that witness had no directions from plaintiff to write those letters; that the plaintiff was absent when witness wrote the two letters; that the draft, being produced by the plaintiff, was shown by the witness to

the defendants, who stated it was the same referred to in the first letter written by him. It was admitted such letters were received by the defendants, by due course of mail.

Thereupon the plaintiff offered to return and deliver said draft to the defendants, which was refused, and the counsel for defendants next read said letters in evidence.

The defendants thereupon offered to read said draft to the jury, to which the plaintiff objected, and such objection was sustained by the court, and defendants excepted.

The defendants then produced William Jennison, Jr., as a witness, who was sworn, and stated, in substance, that he was directed by the defendants, his brothers, to, and he did, write the plaintiff, on or about the 25th September, 1857, as follows—which was received by plaintiff.

"DETROIT, September 25, 1857.

Thomas A. Parker, Esq., Detroit.

Dear Sir—My brothers, C. E. Jennison & Co., have just written me stating that they presumed the Frost & Bradley note was paid from their not hearing from you, and that they would not be held responsible for its payment.          Yours, &c.,          W. JENNISON, JR."

And afterwards, in a conversation with the plaintiff, he, witness, told him that he had been guilty of gross negligence in not returning the draft. That on the fourth day of January, 1858, the witness paid plaintiff $100, and on the second of February, 1858, $32, for balance of his demands, after deducting the amount of said draft, which was left unsettled, and which amount the plaintiff also claimed should have been paid.

Thereupon the testimony being closed, the court charged the jury that there was not sufficient evidence before them to take into consideration anything relating to said draft; and such evidence was withdrawn from them, and defendants excepted.

Defendants' counsel requested the court to charge the

jury that if they believed said draft was transmitted as aforesaid by defendants to, and received by, the plaintiff, that the plaintiff was bound to present the same for payment, and to notify the drawers and the defendants of such presentment, and the non-payment of said draft. And also that if the plaintiff had neglected so to do, that he could not recover in this action.

The court refused so to charge, and defendants excepted.

The jury having returned a verdict for plaintiff for the amount claimed, defendants brought error.

The following are the letters above referred to:

"DETROIT, July 24, 1857.

Messrs. C. E. JENNISON & BRO.:

Gentlemen—Your favor of the 20th was duly received, and your draft on Chas. Bradley duly accounted, and will fall due on the 15th August. Mr. Parker is now in New York, and you had better hold the plow until his return, which will be the first of next week. I am,

Yours very respectfully,    THOMAS A. PARKER.

RAY."

"DETROIT, August 19, 1857.

Messrs. C. E. JENNISON & BRO., Bay City:

Gentlemen—The draft on Chas. Bradley, which you enclosed to me, fell due on the 15th, but was not paid. I had it protested, but still hold it a few days, for Mr. Bradley is at present absent from home, and he may pay it on his return, which will be in a day or two. Please remit balance of note at *your earliest possible convenience*, and much oblige        Yours truly,

THOMAS A. PARKER.

RAY."

"DETROIT, September 26, 1857.

Messrs. C. E. JENNISON & BRO.:

Gentlemen—I received a letter from your brother, William Jennison, Jr., Esq., this evening, saying that he had

just received a letter from you stating that you presumed the Frost & Bradley note was paid, and from your not hearing from me, that you would not be held responsible for its *payment*.

You know that it was not paid when due, for you got a notice of its protest. But as it is a matter of very little consequence to me whether you pay your own acceptances, or notes which are *your own*, or not, I will say no more about it, but merely request the favor of your paying me the amount due on your note given over a year ago, with interest, about $275, and the account enclosed, $39. Yours respectfully, T. A. PARKER."

*Holbrook & Bishop*, for plaintiffs in error.

*Maynard & Meddaugh*, for defendants in error.

MANNING J.:

The court erred in charging the jury "there was not sufficient evidence before them to take into consideration anything in relation to the draft," and in withdrawing the evidence from the jury.

It was argued there was no evidence of the clerk's authority to receive the draft. Admitting this to be so, there was evidence in plaintiff's letter to defendants of the 26th September, tending to show a ratification by plaintiff of the clerk's acts. They were not repudiated; and plaintiff placed his want of accountability on the ground that the draft was not paid when due, and that defendants had notice of its protest. His language is "you know that it (the draft) was not paid when due, for you got a notice of its protest."

This letter, and plaintiff's offer to return the draft on the trial, would have warranted the jury in finding a ratification of the acts of the clerk. And if the draft was received as collateral security for what defendants were owing plaintiff, to be applied when paid, and not before, it was

his duty to present it for payment on the day it became due, and to give notice of its non-payment to defendants, by whom it was indorsed.—*Dayton v. Trull,* 23 *Wend.* 345; *Bridges v. Berry,* 3 *Taunt.* 130; *Edw. on Bills,* 445. Had he credited defendants with it when it was received, it would not have been such a payment of their debt, *pro tanto,* as would have barred an action for the same amount on the account itself, on his showing he had taken the necessary steps to charge defendants as indorsers, and offered to return the draft on the trial. Had he received it in payment, it would not have discharged the original liability of defendants, if it was not paid when due, unless there was an express agreement to that effect when it was taken, or plaintiff had lost his remedy on the draft against defendants as indorsers. It is therefore immaterial that defendants were not to be credited with it until it was paid. The same reason for notice of non-payment exists in both cases.

In *Lawrence v. McCalmont* 2 *How.* 427, the notes were were not held as collateral security by McCalmont, Brothers & Co. as appears very clearly from the case. They were sought to be charged as agents for collection merely. The request to charge and the charge of the court made on the trial (*pp.* 448, 449), show‖ this, as well as the language of Judge Story on this part of the case, in delivering the opinion of the court. He says "the notes having been left for collection only, with the agents of the London house, although indorsed by the Messrs. Lawrence, they do not fall within the strict rules of commercial law applicable to negotiable paper" (*p.* 454). He also says, in speaking of *Swift v. Tyson,* 16 *Pet.* 1, "There the question was, not whether a person receiving a note as collateral security for an antecedent debt, was not bound to due diligence in its collection, otherwise he made it his own, which was not doubted; but" &c., thereby clearly recognizing the liability of McCalmont, Brothers & Co. had the notes been

received by them as collateral security, and not as agents for collection merely.

It may be said plaintiff's letter was evidence for as well as against him: That is true, but it was for the jury to say what effect should be given to it.

We think the court erred also in refusing to let defendant's counsel read the draft as evidence to the jury. It was cumulative evidence only, but that was not a good reason for rejecting it.

The judgment should be reversed, and a new trial be granted.

Martin Ch. J., and Christiancy J., concurred.

Campbell J.:

I concur with my brethren that the judgment should be reversed, but I do not concur with them in their reasons for reversal.

The defence set up in their plea, by the defendants below — the plaintiffs in error — was, that they had paid the demand sued upon, by a draft of Frost & Bradley, to defendant's order, on Charles Bradley, which was received as part payment by Parker.

The proof introduced to support the defense showed affirmatively that the draft was sent and received, if the clerk's authority is admitted, not as payment, but to be applied if paid at maturity. There was no direct evidence that it was taken on any terms whatever, but the letters in proof were sufficient to go to the jury on that point; and for the purposes of this case, inasmuch as the facts were taken from the jury, it may be admitted Parker received the draft on the terms upon which it was transmitted. The defendants proved that the draft was not paid, although accepted; and that some time after they had been notified of its non-payment, they refused to be held liable on the draft, because they had received no further infor-

mation, and therefore claimed the right to presume it paid. The plaintiff below offered to return the draft on the trial.

No claim was set up in the plea, and no evidence was offered to prove, that the holder had been guilty of any *laches* in not giving proper notice of dishonor; neither was any evidence given of damage. The defendants below rested their whole defence upon the ground that, by showing the receipt of the instrument on the understanding that its proceeds should, when paid, be applied on the debt, the presumption arose that, although unpaid, the plaintiff must be assumed to have omitted doing the acts necessary to hold the drawers, and that it must be further assumed that loss had thereby accrued to the defendants to the *full* amount of the bill, so that the plaintiff would be held to have made the paper his own.

This view can only be sustained by holding that there is no distinction between an absolute payment, and an agreement to apply the proceeds of a bill, if paid at maturity. Where absolute payment is made by the negotiable instrument, either of the debtor, or of another person endorsed by the debtor, the original liability is ended, and if the paper is not paid, the only recourse against the defendant is as a party to it. But such an agreement as is here set up, can, upon the broadest interpretation, amount to no more than a suspension of action on the original claim for the time being. Upon the dishonor of the new security, this suspension ceases. If, then, there is any right to charge the holder, it arises, not out of the original transfer of the new security, but out of some negligence or misconduct, which prevents him from availing himself of the dishonor. This might arise from a failure to present for payment, or to give notice of dishonor, or from other acts.

No case can be found which holds the creditor liable for any more than the actual damage. It is admitted by all, that if the drawer waived notice, or was not entitled to it, no liability arises for not giving it. If the defendants had

lost no rights, they clearly would have no reason to com-
plain of a mere want of notice of dishonor.  The case made
does not exclude any of these possibilities, or the further
one of such an identity of drawers and acceptor as would
dispense with it.  And it does not negative full diligence.

When the right of one party depends upon the hap-
pening of a condition precedent, the rule is a general one,
that he must show performance of that condition affirma-
tively, or show a sufficient avoidance of it whereby the con-
dition has been abrogated.   And where that is to be made
out by relying upon the negligence of the other party, such
negligence is not presumable.   Where one séeks to charge
another with a neglect of duty, the burden of proof is on
the party who alleges the neglect, although it may involve
a negative.—1 *Chit. Pl.* 268; 1 *Greenl. Ev.* §§ 79, 80, 81, 81 *a*,
*and notes to* § 81; *Crowley v. Page*, 7 *C. & P.* 790; *Brind
v. Dale*, 8 *C. & P.* 207; *Beardslee v. Richardson*, 11 *Wend.*
25; *Marsh v. Horne*, 5 *B. & C.* 322.  The exceptions are
special, and where parties are in the nature of insurers, as
common carriers and innkeepers.

The question before us is not whether if Parker was
negligent he is answerable for his negligence, but whether
the draft being produced unpaid, he must be presumed,
without proof, to have been guilty of negligence to the
damage of the defendants.  I see no ground for such a
presumption.  If a note is left with a bank for collection,
it surely would not be sufficient, in an action for neglect
to have it protested and noticed, to show simply the de-
posit of the note.  Negligence must be satisfactorily made
out.   The case of the *Mechanics Bank of Baltimore v.
Merchants Bank*, 6 *Metc.* 13, shows in what light the duty
of such an agency is viewed.

When a bill is remitted to be collected, and applied if paid,
if any duty devolves upon the recipient to have the necessary
steps taken, it is a duty of agency *pro hoc vice*.  I do not
know in what other capacity a person can very well be

assumed to act in such business. He is engaged, in this particular regard, to perform just such duties as appertain to a banker or factor, who may, or may not, have accounts on which to apply the proceeds; and his responsibility, which is entirely gratuitous, can be no greater than theirs. This is the view taken by the authorities.— *Colt v. Noble,* 5 *Mass.* 170 (*Parsons Ch. J.*); *Hamilton v Cunningham,* 2 *Brock.* 350; *Gallagher's Ex's v. Roberts,* 2 *Wash. C. C.* 191; *Cromwell v. Lovett,* 1 *Hall,* 56; *Lawrence v. McCalmont,* 2 *How.* 426. My brethren have criticised this latter case as not in point. There the defendants deposited with the plaintiff's agents negotiable paper to collect, and apply the proceeds in payment of plaintiff's claim. The agents represented the plaintiffs in this country, and no question arose as to their authority. Their acts were the plaintiff's acts. The plaintiffs attempted to show diligence in protesting the paper, and failed. And after this failure, there being no proof of diligence, the court was asked to infer negligence and damage. But the court held expressly, that in the absence of proof of negligence or damage, they would presume the agents did their duty, and that in this transaction their duty was a mere agency duty, on behalf of the defendants, springing out of the particular business. The New York house were not the defendants' general agents, but represented the English firm; and it was not pretended but that their London principals would have been responsible for their negligence.

Had the New York house been regarded as general agents of the defendants, this question could not have been imported into the case. They were to the defendants what Parker's clerk, or Parker himself, was here to Jennison Brothers. The law of this case may be disputed, but it certainly is in point.

In *Covely v. Fox,* 11 *Pa. St.* 171, it was held that express proof of loss of a collateral security by a creditor's *laches,* is not admissible to show payment, but needs a

different issue to admit it. In *Kelsey v. Roseborough*, 2 *Rich.* 241, the *onus* of proving neglect and loss is held to be with the defendant. And a reference to *Price v. Price*, 16 *M. & W.* 232, will show that the affirmative of the issue is not upon the creditor.

The rule laid down in 2 *Am. Lead. Cas.* 185, as the result of the authorities, is that upon proof of negligence, and an omission to present the paper and give notice of dishonor, a presumption arises of damage, which presumption may be rebutted in various ways. This rule is not unreasonable. But the case of *Dayton v. Trull* stands alone, I think, in asserting the broad doctrine that negligence will be presumed in all cases where diligence is not shown. The only case there cited, where negligence was not positively shown, was the *nisi prius* case of *Hebden v. Hartsink*, 4 *Esp.* 46; and in that case, the party failed to produce or account for the bill, which he certainly was bound to do, and which here was done by Parker, and by the defendants below for him. That case was decided after the statute 3 and 4 *Anne, Ch.* 9,—which required proof of diligence; and in *Dayton v. Trull* this same defect existed, so that the broad discussion became needless, although it was not irrelevant.

The effect of such a doctrine is to abolish the distinction between conditional and absolute payments, and to raise in every case a presumption of payment; a doctrine which is not law in this state, even in the absence of express conditions. — *Gardner v. Gorham*, 1 *Doug. Mich.* 507.

I think the court below should not have excluded the draft, because the defendants might have been in a condition to follow it up with proof of negligence. Upon this ground I think the judgment should be reversed. But upon the other grounds referred to I think there was no error.

*Judgment reversed.*