## GRISARD v. HINSON.

PRINCIPAL AND SURETY: *Loss of collateral security: Negligence of surety.*

The principal debtor on a promissory note, payable to the plaintiff, and on which the defendant was surety, to secure its payment executed to the plaintiff a mortgage on a crop of corn which was never in the possession, or under the control of the plaintiff. On the maturity of the note the defendant took no steps to compel the plaintiff

Grisard v. Hinson.

to foreclose the mortgage, or to proceed against the principal debtor in the ordinary course of law, nor did he take any other means to entitle himself to the control of the mortgage. The corn was afterwards used or disposed of by the mortgagor. *Held:* That the defendant having stood passively by until the corn was used, he is not entitled because of its loss to be exonerated from any part of his liability to pay the note.

APPEAL from *Faulkner* Chancery Court.
D. W. CARROLL, Chancellor.

*E. A. Bolton,* for appellants.

Prior to the time Hinson gave the order to appellants and wrote that he would still stand good on the note, there is no question, and Hinson is estopped to deny his liability to this time, or claim that appellants had negligently allowed Price to waste the mortgaged property. He is concluded by his order up to this date in 1885. " He who is silent when conscience requires him to speak, will not be permitted to speak when conscience requires him to be silent." *Foubl. Eq.,* 163 ; 2 *Smith's Lead. Cases,* 660 ; *Johns. Chy.,* 353 ; 26 *N. J. Eq.,* 471 ; *Herman Estoppel &c.,* secs. 988 *to* 1027. Further, if Hinson thought anything wrong, our statute points out his remedy as a surety. *Mansf. Dig.,* 6398-9. Hinson cannot inquire into any negligence prior to the giving the order in 1885, being concluded thereby. 1 *Gr. Ev,,* secs. 204, 207-8 ; 4 *N. W. Rep.,* 720-21-22 ; *Ib.,* 139 ; 33 *Ark.,* 465 ; 45 *Id.,* 37 ; 37 *Id.,* 47.

2. No property was lost in 1885 by any supineness or negligence of appellants. Hinson had the right to pay off the mortgage and be subrogated to its lien, or it he desired release to order appellants to sue on the note under our statute. but he did not do so. The mortgage was renewed in March, 1885, and was not due until ................., 1885. Courts take judicial notice of the seasons in which crops are grown and gathered. When the mortgage fell due the season for

gathering cotton crop was not over, and it was not appellant's duty to go and take charge of an ungathered crop; or stand over the mortgagor and see that he did not use any of the corn, &c. Such is not the custom of the country. Nothing was made away with, with the knowledge or consent of appellants. The burden of proving negligence was on appellee. Reviews the evidence, and contends that the failure to take *immediate* charge of the crop; or the sale of $7\frac{1}{2}$ bushels of corn, or the use of the balance to feed with, except 10 bushels, was not such negligence as to release Hinson, *notwithstanding the fact* that Hinson signed the note as surety for Price to buy the mule because Price was indebted to him, and Hinson got the mule from Price to settle that debt. It would be inequitable now, not to pay Grisard after getting the mule for Hinson's debt from Price. *White & Tudor's L. C. Am. Notes to Reese v. Berrington, pt.* 2, *vol.* 2, *p.* 1903; 3 *Comst.*, 446; 5 *Barb.* (*N. Y.*), 580; 37 *Md.*, 491; 35 *N. J. Eq.*, 160; 6 *How. U. S.*, 279.

Hinson was certainly released no further than he was prejudiced by appellant's negligence, and after giving Hinson credit for the corn used up and sold and all the property lost, he still owes $40 or more. Hinson was bound to see that the property was not wasted, and he was equally bound to due diligence as a surety, and should have pursued his statutory remedy.

*J. H. Harrod*, for appellee.

The law, under the circumstances of this case is, that appellants are chargeable with all loss occasioned by their negligence, and needs no authority, as it is beyond dispute. So the real issue is, was the property lost by appellant's negligence worth as much as the note appellant signed? Reviews the evidence and contends that it is proven that the property so lost amounts to $264.50.

Grisard v. Hioson.

As to the law, see *Bisp. Eq.*, *3d Ed.*, *sec.* 339 ; *Am. Notes to Reese v. Berrington*, 2 *White & Tudor's L. C. in Eq.*, *pt.* 2, *pp.* 1897, 1901 ; 4 *John. Ch.*, 123.

Omitting the mule and the $36 paid in 1884, property to the value of $153.50 was lost by appellant's negligence, which is more than the debt.

| | |
|---|---:|
| 165 bushels corn | $82 50 |
| Two cows | 31 00 |
| One bale cotton | 40 00 |
| | $153 50 |

Any laches by a creditor in the case or *management* of collateral securities will discharge a surety *pro tanto*, for the reason that it defeats the surety's right of subrogation. 9 *N. W. Rep.*, 863 ; 25 *Id.*, 742 ; see also, 36 *Ark.*, 145 ; 32 *Id.*, 478.

As to the doctrine of estoppel, it is difficult to see just where or how it can get into this case.

In the first place, estoppel *in pais* operates only in favor of a person who has been misled to his injury. *Bisp. Eq.*, sec. 293 ; *Id.*, sec. 291.

A failure by Hinson to pursue the remedy in *Mansf. Dig.*, sec. 6398–9, does not make it a waiver of his equities or a sacrifice of his legal rights. These sections are for the protection of the surety, and not designed to defeat his equities in collateral securities furnished by the principal debtor.

BATTLE, J. This action is on a promissory note made by one Price, as the principal debtor, and by A. B. Hinson as his surety. The defense of Hinson is, that Grisard & Gist, the payees of the note, received from Price two mortgages on personal property to secure the payment of the note; and that they negligently permitted some of the property to be lost and disposed of, and

thereby lost the right of action against him. On motion of Hinson this cause was transferred, as to him, from the Faulkner circuit court, in which it was brought, to the Faulkner chancery court. Decree was rendered in favor of Hinson against Grisard & Gist, and they appealed.

The evidence shows that the two mortgages were executed by Price to secure the note sued on and his account with appellants. One was executed on the 28th of January, 1884, the date of the note, and the other on the 11th of March, 1885. The property embraced in the first was the crops raised by Price in 1884, one mule and some cattle and their increase; and in the second the crops raised by Price in 1885, and the mule and cattle. Price raised in 1884 three bales of cotton and about sixty bushels of corn. He delivered to appellants two of these bales, which they sold and placed the proceeds, first to the satisfaction of his account with them for 1884, which was secured by the mortgage, and the overplus to the part payment of the note. The other bale Price sold and used the proceeds. Price also used the corn. In 1885 he raised one bale of cotton and about one hundred and five bushels of corn. He delivered the bale of cotton to appellants, which they sold and applied the proceeds to the part payment of his account with them for 1885, which was secured by the second mortgage. He sold seven bushels of the corn, and used the money and the remainder of the corn of 1885, except ten bushels. Price also sold two of the cows and one yearling described in the mortgage. The remainder of the cattle, except one yearling, and the mule and ten bushels of corn were sold under the mortgages and applied by appellants to the satisfaction of the account of 1885 and part payment of the note. One yearling still remains unsold and in the possession of Price.

Appellants at first refused to advance to or credit Price for 1885. Price then procured a writing from Hinson requesting them to advance to Price, on account, such things as he needed for that year, and take a mortgage on his property to secure the note and account, saying that he would still remain liable or bound by the note. At the time he gave this writing he knew that Price had sold the one bale of the crop of 1884. Pursuant to this request the second mortgage was taken.

As to the cattle sold by Price, there is no evidence that they have been lost, ceased to exist, or cannot now be sold to satisfy the mortgages. The fact that they were sold does not release them from the mortgages, or show that Hinson is exonerated from any part of his liability to pay the note.

As to the corn of 1884, Hinson virtually consented that appellants might permit Price to use it when he requested them to let him have such things as he needed in 1885. Price was a farmer and needed the corn. When he gave the writing Hinson knew that Price had used the one bale of the crop of 1884, and waived any advantage he might have had on account of it. Was he entitled to any relief on account of Price using and consuming ninety-five bushels of the corn of 1885 ?

Whenever funds or securities are placed in the hands of a creditor by a principal for the security of a debt, and they are lost through the want of ordinary diligence of the creditor, the surety bound for the payment of the debt so secured is discharged to the extent of the loss. The creditor, in such a case, assumes the duty of preserving such funds or securities and is bound to be diligent in the discharge of the duty. If he surrenders or abandons the funds or securities, or fails to perform any act necessary to preserve their validity or legal force and

effect, or, in case of the securety consisting of perishable property, he allows it to be taken out of his possession and destroyed, or for the want of ordinary care and attention he allows it to perish and become worthless in his hands, the loss should fall on him and the surety should be exonerated to the extent of the injury. *Kemmerer v. Wilson*, 31 *Penn. St.*, 110; *Pickens v. Yarborough*, 26 *Ala.*, 417; *Noland v. Clark*, 10 *B. Mon.*, 239; *Jennison v. Parker*, 7 *Mich.*, 355; *Sellers v. Jones*, 22 *Penn. St.*, 423; *Slevin v. Morrow*, 4 *Ind.*, 425; *Lee v. Baldwin*, 10 *Ga.*, 208; *Shippen v. Clapp*, 36 *Penn. St.*, 89; *Lumsden v. Leonard*, 55 *Ga.*, 374; *Baker v. Briggs*, 8 *Pick.*, 128; *Trotter v. Crockett,* 2 *Porter*, [*Ala.*], 401.

Where the funds and securities are placed in the hands of the creditor there is a duty to preserve the funds and securities assumed by the creditor, and the damages he is liable for are the result of a failure to discharge that duty. But in this case the ninety-five bushels of corn never were in the possession of appellants. They were in the hands of Price, where they were intended to remain until default was made in the condition of the mortgage. Appellants never had assumed to take possession or control of the corn. Under these circumstances are appellants liable for the loss of the corn?

Hinson is equally bound with his principal to pay the note sued on. Appellants are entitled to proceed against him without resorting in the first instance to their mortgages. They are not deprived of their right to resort to the surety, because a mortgage was executed to them. Hinson was as much in default and guilty of laches in not paying off the note sued on as Price, his principal; and cannot rightfully claim to be damaged by the act of the appellants. For he was entitled to pay the note at any time after it became due, and take control of the

mortgages, or, through the aid of a court of equity, upon giving the proper indemnity against costs and delay, to call on appellants to proceed against his principal and require them to do the most they could for his benefit, or, under our statutes, to compel them to commence suit, and proceed in it with due dilligence, in the ordinary course of law, to judgment and execution. If he was damaged, it was as much by his own neglect and failure to discharge his duty as by any omission of appellants. If he had performed his obligations to appellants, he would have had control of the note and mortgage before any part of the ninety-five bushels of corn was consumed or disposed of. To allow him now to take advantage of the delay of appellants in foreclosing the mortgage, under such circumstances, seems very much like allowing a man to take advantage of his own wrong. If appellants were guilty of negligence, he was guilty of a posi·tive omission of duty. They were under no higher obligation to foreclose the mortgage, than he was to pay the note and forclose the mortgage himself. Under these circumstances it would be contrary to the most obvious principles of justice to inflict upon appellants the loss of their debt. "The surety," says Lord Eldon (*Eyre v. Everett*, 2 *Russ.*, 381), "has no right to say that he is discharged from the debt which he has engaged to pay, together with the principal, if all that he rests on is the *passive conduct* of the creditor in not suing. He must himself use dilligence, and take such effective means as will enable him to call on the creditor either to sue or to give him, the surety, the means of suing." Hinson used no diligence to give himself the means of suing, or called upon appellants to foreclose, but quietly and passively stood by until the corn was consumed, and then demanded that appellants bear the consequences of his

negligence. They are not liable to him for the loss of the corn, and he is not entitled to exoneration to any extent. *Clopton v. Spratt,* 52 *Miss.,* 251; *Freeman v. Yingling,* 37 *Md.,* 491; *Schroeppell v. Shaw,* 3 *Comst.,* 446; 5 *Bart.,* 580; *Richardson v. Ins. Co.,* 27 *Grat.,* 749; *Brick adv. Freehold National Banking Co.,* 8 *Vroom,* 307; *Philbrooks v. McEwan,* 29 *Ind.,* 347; *Cherry v. Miller,* 7 *Lea.,* 305; 1 *Story's Eq. Jur.,* secs. 336, 501, 502, 639.

The decree of the court below is reversed. A decree will be entered here in favor of the appellants for the amount due on the note.