## LOEB v. GERMAN NATIONAL BANK.

### Opinion delivered November 16, 1908.

1. ACTION ON NOTES—MOTION TO TRANSFER TO EQUITY.—In an action on notes a motion to transfer the cause to equity which alleges that "it is impossible for defendants to state, owing to the large number of transactions between the parties, the calculations of interest on the various notes, the various offsets and appropriations of collateral to the various notes, just what amount is now due, if any, by said defendants upon the notes sued upon herein," sets up no equitable defense and was properly refused. (Page 112.)

2. CORPORATIONS—TRANSFER OF STOCK—RECORD.—Kirby's Digest, § 849, providing for the recording of transfers of corporate stock with the county clerk, does not apply to transfers for collateral security, but only to actual sales. (Page 113.)

3. BILLS AND NOTES—DELAY IN ENFORCEMENT OF COLLATERAL.—The maker of a note is not exonerated from liability thereon by mere delay of the payee in enforcing the collection of collateral security (Page 114.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 30th of April, 1906, the German National Bank brought suit against Joseph Loeb and Helen Loeb for a balance upon two promissory notes. On November 5, 1906, the defendants filed an answer and counterclaim. On March 15, 1907, the plaintiff filed a reply to the counterclaim; and on March 26, 1907, the defendant filed a motion to transfer to equity, which was as follows, to-wit:

"Defendants state that, beginning in September, 1899, they borrowed money up to and including July, 1903, from the plain-

tiff; that from time to time during said period they executed to plaintiff about seventy-five notes, ranging in amount of from $500 to $12,000; that said notes were usually made payable in from thirty to one hundred and twenty days, and were discounted at the bank of said plaintiff by said defendants at the time of their execution, which notes were generally renewed from time to time during said period; that as many as fifteen or twenty notes were so made and renewed during each year covering said period; that the average amount borrowed or renewed each year amounted to about $20,000, or an aggregate of approximately $90,000; that during said period they also indorsed notes at said bank for other parties to the amount approximately of from $65,000 to $75,000; that, to secure said amounts, including the notes sued upon herein, and the indorsements made by them they deposited with said bank from time to time certain collateral security, ranging in amounts from $15,000 to $25,000; that at all times during said period there was always a surplus of several thousand dollars in value of collateral in excess of the amount defendants were indebted to said plaintiff; that at various times during said period collateral so deposited were realized upon by said bank, and the amounts collected thereon were applied to the payment of the various notes and interest executed by defendants.

"That it is impossible for defendants to state, owing to the large number of transactions between the parties, the calculations of interest on the various notes, the various offsets and appropriations of collateral to the various notes, just what amount is now due, if any, by said defendants upon the notes sued upon herein.

"That by reason of various loans, withdrawals, sales by the said Joseph and Helen Wolf of the 460 shares of stock in the Little Rock Building Association and the Ladies' Building Association, at various times, covering a period of several years, it is impossible for defendants to state, except approximately, what the building stock so transferred at various times was worth at the time said sales, loans and withdrawals were made and had, and in what amount defendants were damaged at various times on account of the negligence of said plaintiff in not having said stock recorded upon the books of the company according to law and in not having said collateral property preserved and applied to the payment of the said notes.

"That also by reason of the conduct of said plaintiff the value of said shares of stock were deteriorated in value on account of the delinquency of the said Joseph and Helen Wolf in not keeping said stock paid up and the assessments of fines, penalties and interest against said stock.

"That, for the purpose of ascertaining the exact amount as herein stated, it is necessary that an accounting be had between the parties; that the stating of the account between the parties will necesitate an examination of the books of said building association and of plaintiff, and the examination of the various accounts covering a period of several years.

"Wherefore they pray that this cause be transferred to chancery court, so that a master may be appointed for the purpose of stating the acount between the parties, to the end that it may be ascertained the amount due upon the note sued upon, and in what amount plaintiff is indebted to the defendants, if at all, on account of their said counterclaims."

The motion to transfer was overruled on April 6, 1907, and defendants excepted thereto. On the same day the defendants filed an amended and substituted answer and counterclaim, which is as follows, to-wit:

"Come the defendants and admit that they executed the notes set out in the complaint herein.

"But they state that on June 18, 1901, being indebted to plaintiff for various sums of money, aggregating about $15,000, they transferred and assigned to plaintiff one note for $4,000, dated June 18, 1901, payable six months after date, with interest from maturity at ten per cent. per annum until paid, executed by Helen and Joseph Wolf, and made payable to the defendant, Helen Loeb, which note was secured by an assignment and transfer from the said Helen Wolf of 260 shares of stock in the Ladies' Building Association of Little Rock, and of 200 shares of stock in the Little Rock Building Association of Little Rock, Arkansas, the value of said shares of stock at the time being $4,000; that, in addition to the transfer and assignment of said note by said Helen Loeb to said bank, she also transferred and delivered to said bank a separate instrument containing a sale and transfer of said 460 shares of stock by the said Helen Wolf to the said Helen Loeb; that said note containing said transfer

and assignment of said stock, as well as said other sale and assignment of said shares of stock, was assigned and transferred to said plaintiff as collateral security for any amounts then due said plaintiff by defendants, or for any other sum that might be due thereafter to said plaintiff, including the notes in controversy.

"That said plaintiff failed and carelessly neglected to have said assignments and transfers of stock duly recorded or transferred upon the books of said building association as required by law; that the said plaintiff at the time and for several years thereafter, knowing the said Helen and Joseph Wolf to be insolvent, allowed and permitted the said Joseph and Helen Wolf to sell and dispose of said shares of stock; that, the plaintiff knowing the financial condition of said parties, it was their (its) duty to use ordinary diligence to preserve the validity and legal force of said collateral, but instead thereof they (it) failed to have such collateral transferred and recorded according to law, or take any steps to realize on or protect said security in any way; that, by reason of said sale and transfer of said shares of stock by said Helen and Joseph Wolf to third parties, said collateral note and transfer of stock by said Helen and Joseph Wolf were rendered absolutely worthless, they being insolvent at the time; that at the time said shares of stock were sold and converted by the said Helen and Joseph Wolf the said defendants had other collateral deposited with said bank; that, instead of preserving said collateral of Helen and Joseph Wolf, it applied and appropriated to the payment of the indebtedness due it by said defendant other valuable collateral deposited by said defendants.

"That by reason thereof said defendants were damaged in the sum of four thousand dollars; that, but for the negligence of plaintiff, as herein stated, said shares of stock of Helen and Joseph Wolf should have been protected, appropriated and applied to the payment of the notes sued upon herein and other indebtedness due by said defendants to said plaintiff.

"Wherefore the defendants pray judgment on this their counterclaim against said plaintiff in the sum of four thousand dollars and for costs, etc."

The cause came on to be heard, and the court sustained a demurrer to the amended and substituted answer and counter-

claim; and, the defendants standing upon the same, judgment was entered for the notes sued upon, and the defendants appealed.

*John W. Blackwood,* for appellants.

1. The cause should have been transferred to equity. 74 Ark. 277; 71 *Id.* 323; 31 *Id.* 345, 352, 355; 49 *Id.* 575-6; 1 Story, Eq. Jur. (13 Ed.) § 450; 48 Ark. 435; Adams, Eq. 431; 1 Story, Eq. § § 441-3, 457.

2. Whenever funds or securities are placed in the hands of a creditor to secure a debt, he is a trustee; and, if such funds, securities, etc., are lost through want of ordinary diligence, the creditor is liable. 50 Ark. 229, 234; 74 *Id.* 241-8; Pingrey on Suretyship & Guaranty, § 128; Stearns on Suretyship, § 29; Jones on Pledges, (2 Ed.) § § 403-417; Colebrooke on Collateral Security, (2 Ed.) § § 88, 90; 1 Brandt on Suretyship & Guaranty, (3 Ed.) § § 498-506.

*Ratcliffe, Fletcher & Ratcliffe,* for appellee.

1. The motion to transfer to equity was for delay merely. No case of equity jurisdiction was alleged.

2. It was *primarily* the duty of the debtor to have the stock properly transferred. No request was made for the bank to act, and mere passive neglect of the creditor. The debtor must use diligence. 50 Ark. 239. Nor does mere inaction render the creditor liable. 64 Ark. 82; 2 Russ. 381.

HILL, C. J., (after stating the facts). I. The transfer to equity was properly denied. No equitable defense was pleaded in the answer; and, if it be taken that the motion to transfer should be treated as a part of the answer, still the result would be the same, because no equitable defense is therein stated. The execution of the notes is admitted, and it is not averred that the defendants are indebted to the plaintiffs, the amount thereof to be determined by an account to be stated; but it is merely averred that "it is impossible for the defendants to state, owing to the large number of transactions between the parties, the calculations of interest on the various notes, the various offsets and appropriations of collateral to the various notes, just what amount is now due upon the notes sued upon herein."

It is a mere invitation to have an accounting in order to

ascertain whether or not the defendants have a defense. The jurisdiction of equity to state an account in proper actions is well established; but there is nothing set forth, either in the answer or the motion, but what could be ascertained in a court of law without the necessity for an equitable accounting.

II. The demurrer to the substituted answer and counterclaim was properly sustained. The gravamen of the charge constituting the counterclaim is that the bank neglected to have the assignments and transfers of the stock recorded with the county clerk or transferred upon the books of the building association.

Under section 849 of Kirby's Digest, providing for the recording with county clerks of transfers of stock, it has been held that this does not apply to transfers for collateral security, but only applies to actual sales. *Batesville Tel. Co.* v. *Meyer-Schmidt Gro. Co.,* 68 Ark. 115; *Scott* v. *Houpt,* 73 Ark. 78.

Section 853 of Kirby's Digest provides that the stock of every corporation shall be deemed personal property, and be transferred on the books of such corporation in such form as the directors shall prescribe. But where there is a pledge of stock by delivery of the certificates, without notice to the corporation or transfer on its books, the pledge is valid as between the parties. Helliwell on Stocks and Stockholders, § 115. The object of such statutes as these, and by-laws made in conformity to them, is primarily for the benefit of the corporation; and transfers, so far as the corporation is concerned, are not valid without complying with the statute and the by-laws, where there is one; but this does not reach to transfers between parties as collateral security. Helliwell on Stock and Stockholders, § § 116 and 162.

It follows that the assignment of the Wolf shares to Loeb was good as between Wolf and Loeb without recording, either on the books of the company or in the county clerk's office; and likewise that the transfer of the shares from Loeb to the bank was good without recording on the books of the county clerk or the books of the corporation, as these statutes apply to sales and not to transfers of stock as collateral security. If it were necessary to protect either Loeb or the bank by having the assignment recorded, that duty rested primarily upon Loeb,

and he cannot accuse the bank of neglect of duty when he was primarily in default in the performance of this duty, if it is a duty necessary in order to safeguard the collateral.

The only averment in the answer that raises any doubt as to its sufficiency is wherein it is stated that the bank knew that said Helen and Joseph Wolf were insolvent, and allowed and permitted them to sell and dispose of said shares of stock. But, taking this averment in connection with the other allegations in the answer, the court understands it to mean that the bank, by failing to have the assignments and transfers recorded, thereby enabled the said Helen and Joseph Wolf to sell and dispose of said shares, in which event the bank would not be liable to Loeb, for, as stated, that duty rested primarily upon him. If more was intended to be alleged, it is only done in general terms, which do not specifically state facts relied upon, and amount to no defense.

If it was intended by this averment to charge that the bank turned over to the said Helen and Joseph Wolf the collateral, and by such surrender of it to them permitted them to sell it, thereby destroying it as collateral to Loeb, a far different question would be presented. This construction cannot be the correct one, however, for later in the answer the charge against the bank is that, but for the negligence of said plaintiff as herein stated, said shares of stock should have been protected, appropriated and applied to the payment of the notes sued upon; whereas, if the construction above indicated were the true one, there would have been a charge of conversion, instead of one of mere negligence in not having the instruments recorded.

The utmost that can be said of the other charges in the answer is that they charge mere delay in enforcing collections of securities; and it is well settled that this is not sufficient to exonerate a surety. *Grisard* v. *Hinson,* 50 Ark. 229; *Wilkerson* v. *Crescent Ins. Co.,* 64 Ark. 80; *First Nat. Bank* v. *Waddell,* 74 Ark. 241.

Judgment is affirmed.