BRANDON J. HARRISON, Judge
This appeal concerns the transfer of more than $ 1.2 million in stock and the securities law of Arkansas. The main procedural issue is whether the circuit court correctly granted summary judgment in favor of First National Bank of Eastern Arkansas on a complaint that William Ash filed against the bank. The complaint raised breach-of-fiduciary-duty, conversion, and replevin claims against First National Bank. Ash challenges the circuit court's decision that he had legally transferred his shares of stock in Bancshares of Eastern Arkansas, Inc. to First National Bank of Eastern Arkansas, as the trustee for the irrevocable testamentary trust Ash's mother had created. Ash says he intended to put the stock into a separate and new revocable trust that he thought he had created with an attorney's help. Ash also contends that, even if there was a transfer of stock to the irrevocable testamentary trust, then the transfer still represents an overreach by the bank and opens it up to some potential liability such that summary judgment was improper. We agree with Ash in part, and disagree in part.
I. The Previous Appeal (Ash I)
This is neither the parties' nor this court's first rodeo. In 2017, we vacated the St. Francis County Circuit Court's order granting summary judgment to First National Bank and held that the "court erred as a matter of law when it determined that the stock power, standing alone, effectively transferred the stock and foreclosed all of Ash's claims under Arkansas law." Ash v. First Nat'l Bank of E. Ark. , 2017 Ark. App. 57, at 4, 513 S.W.3d 268, 271 ( Ash I ). We stated that the "better course" was for the parties to argue, and the circuit court to decide, how a security is effectively transferred under Arkansas law and *587 whether an adverse claim is foreclosed under this state's securities law. Id. ; see also Ark. Code Ann. §§ 4-8-101 to -603 (Repl. 2001 & Supp. 2017) (adopting Uniform Commercial Code).
After First National Bank's unsuccessful attempt to seek review of our first opinion in the Arkansas Supreme Court, the mandate issued and the summary-judgment order was officially voided. See Johnson v. Windstream Commc'ns, Inc. , 2014 Ark. App. 99, 2014 WL 580151. On remand in November 2017, the circuit court set the case for a bench trial in 2018. In December 2017, the bank filed a "post-appeal motion for summary judgment" that also incorporated its previous summary-judgment motion. Ash responded. But on the second go-around Ash did not also ask the court for summary judgment; he only asked the court to deny the bank's motion and to award all the relief requested in the complaint. Ash attached seven exhibits to his response:
1. Stock certificate (included in the first appeal record)
2. Corporation's shareholder agreement
3. Bank's supplemental objections and responses to Ash's third set of interrogatories and requests for production of documents
4. Deposition of William Campbell Ash dated 18 May 2015 (included in the first appeal record)
5. Deposition of William Campbell Ash dated 15 September 2015 (included in the first appeal record)
6. Deposition of Brice Fletcher dated 18 May 2015 (included in the first appeal record)
7. Deposition of Roy Jackson dated 18 May 2015 (included in the first appeal record).
The circuit court entered summary judgment for First National Bank based on some UCC provisions. It reasoned that this court (the court of appeals) "did not return this case to reopen the factual record and receive additional proof and testimony." The circuit court's order dismissed all of Ash's claims with prejudice. Ash has returned and, once again, asks that we reverse the summary judgment. We conclude that material issues of fact preclude the granting of summary judgment on the claim of breach of fiduciary duty. Because we partly agree with Ash, the case is affirmed in part; reversed and remanded in part. Duran v. Sw. Ark. Elec. Coop. Corp. , 2018 Ark. 33, at 5, 537 S.W.3d 722, 726 (standard of review when reviewing a summary judgment).
II. The Circuit Court Case
When Daisy Campbell Wilson died, her last will and testament created the William Campbell Ash Trust under an instrument dated 16 June 2011 (the trust). The trustee of this irrevocable testamentary trust is First National Bank of Eastern Arkansas, the sole defendant (turned appellee) in this case. William Ash is the testamentary trust's beneficiary. When created in 2011, the trust was initially funded with 4,164 shares of capital stock in Bancshares of Eastern Arkansas, Inc. (sometimes referred to as the corporation). As best we can tell, the corporation appears to be a parent holding company owning enough (perhaps all) of the voting stock to control First National Bank of Eastern Arkansas's policies and management.
On 13 July 2012, William Ash owned 3,881 shares of capital stock in Bancshares of Eastern Arkansas, Inc. The corporation had memorialized this ownership interest by issuing stock certificate no. 1221. The certificate is titled in William Ash's individual name, not in the name of any trust.
*588 In 2012, Ash had fallen behind on child-support payments. Ash allegedly received advice from his father to set up a new revocable trust to protect his Bancshares stock from Ash's ex-wife. During a deposition related to this case, Ash said that he had called attorney Phil Hicky. According to Ash, Hicky was to create a new trust in which to place Ash's 3,881 shares of Bancshares stock. Ash said that Hicky set a meeting at First National Bank. Hicky presented documents to Ash for his signature. Ash saw "stock was going into a trust," and he thought he signed a document at First National Bank that created a new revocable trust. Instead, Ash signed a stock power that transferred his individual stock into the irrevocable trust created under the estate of his mother, Daisy Campbell Wilson.
Ash also said during his deposition that he found out from Brice Fletcher-the chief executive officer of First National Bank and the board chairman of Bancshares of Eastern Arkansas-that First National Bank believed the shares to be in the irrevocable testamentary trust, not a separately created revocable trust that Ash testified he thought Hicky had created. This was revealed to Ash when he tried to secure money for a business investment, a move First National Bank refused. More specifically, the bank (as trustee) would not liquidate the stock shares or lend money to Ash. Ash also discussed "the possibility of getting to [his] bank stock" with Doug Glover, who worked in First National Bank's trust department. Ash asked Hicky to help. According to Ash, Hicky told him "that stock shouldn't be where it is ... [i]f somebody comes snooping around, somebody is going to be in trouble. ... But I can't help you anymore." Hicky's billing records appear to reflect that he had done some work for Ash individually, including work to either orchestrate or facilitate the stock transfer. (Curiously, Hicky, acting as an attorney for First National Bank, signed the answer that the bank filed against Ash's complaint, the complaint whose entire subject matter is about the same stock transfer that Hicky appears to have helped orchestrate or facilitate.) In any event, no evidence of a written revocable trust agreement was presented to the circuit court. During his deposition, Ash confirmed that he received a schedule K-1 (a tax document) for 2012, 2013, and 2014 regarding income from dividends that flowed to Ash from the irrevocable testamentary trust that had been created under his mother's will.
Brice Fletcher said during his deposition that he knew Ash wanted to transfer his stock "into a trust that he had set up or was going to set up." Fletcher said that because Ash could not find his original stock certificates, the bank prepared an indemnification agreement-which may have been drafted by Hicky according to a bank employee's testimony-to account for the missing certificates; one new stock certificate with all the shares (3,881) was then issued "so then it could properly be transferred into his trust." Fletcher stated that he knew from First National Bank trust officer Glover, and from Denny Jarratt, a bank employee, that "a trust was being formed, that Will's intent was to put shares of stock into [it]." Fletcher was unsure if he knew, at that time, whether the trust was "pursuant to the settlement of the estate or not." According to Fletcher, Hicky had prepared the indemnification agreement; and he "assumed" Hicky had also prepared the stock-power document, which Fletcher never discussed with Ash. (A stock power is a power of attorney that permits a person other than the owner to transfer ownership of a security to a third party. Black's Law Dictionary 1645 (10th ed. 2014) ).
*589 CEO Fletcher testified that, based on his conversations with bank employee Jarratt, and with Rhea Ash, Will's sister, Fletcher concluded that Ash had intended to transfer his individually held 3,881 shares to the bank as trustee of the irrevocable testamentary trust created by Ash's mother's estate. The core reasoning was that "Will's financial responsibility had not shown to where he could manage the assets[.]" Transferring the shares into an irrevocable trust would not have changed the income stream that Ash would receive from the shares. And because Ash would not have had the option to sell the stock, he would have had "income forever as opposed to short-term." In other words, according to the bank, it as trustee could manage Ash's money better than Ash himself could. Fletcher confirmed that Ash did not receive money or any other form of consideration for the transfer.
Roy Jackson is a senior vice president at First National Bank and oversees its trust department. He confirmed in his deposition that the trust department was the executor of Ash's mother's estate and that the trust department also acts as trustee of the irrevocable testamentary trust. Jackson also testified that on 1 August 2012, the trust department received a stock certificate made out to the William Campbell Ash Trust. Jackson understood from bank employee Jarratt that Ash was putting his personal stock into the testamentary trust. Jackson also understood from attorney Hicky that the transfer was being done to protect Ash's assets from creditors. He did not recall whether the stock power was attached to the stock certificate. Jackson then explained that the trust department filed the stock certificate in a secured drawer-an event Jackson considered to have transferred the Bancshares stock to First National Bank (as trustee). According to Jackson, Ash received as consideration the "future income off the stock." But Jackson confirmed that Ash did not receive anything in return for conveying the stock shares to the bank (as trustee) and that he was not aware of anything that would make him (Jackson) think it was not a gift. Jackson also said that he did not refer to the shareholder agreement referenced on the stock certificate. According to Jackson, the 3,881 shares were worth $ 1,241,920 when transferred on the first day in August 2012. To repeat, Jackson said that he thought First National Bank had agreed to accept Ash's individually owned Bancshares stock to help protect Ash's assets from creditors. Fletcher had, however, opined during his deposition that transferring the Bancshares stock into an irrevocable trust would not shield it from creditors because the trust's spendthrift provisions would not apply to the stock.
III. The Conversion and Replevin Claims
A. Indorsement
Having returned to this court, Ash first argues that the indorsement on stock certificate no. 1221 did not transfer the shares to First National Bank. Under Arkansas securities law, an indorsement "means a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it." Ark. Code Ann. § 4-8-102(11) (Supp. 2017) (emphasis added). Ash argues that the indorsement on certificate no. 1221 did not transfer the shares to First National Bank because the indorsement Ash signed on the certificate is specifically to "Will Ash (William Campbell Ash Trust)." An indorsement to a trust is legally insufficient to transfer *590 property to a trustee, because a trustee is the legal owner of the property. Trott v. Jones , 85 Ark. App. 526, 157 S.W.3d 592 (2004). Additionally, Ash and Fletcher testified during their depositions that Ash had intended to transfer the shares into a new revocable trust, not the 2011 irrevocable testamentary trust that Ash's mother had created in her will. This misunderstanding, Ash argues, prevented the circuit court from finding an effective indorsement on the stock certificate as a matter of law.
Though Ash challenges the stock-certificate indorsement, he does not contest the indorsement on the stock power. (To be clear, there are two indorsements at issue: a stock-certificate indorsement and a stock-power indorsement.) In the bank's view, the stock power is a separate document, which is signed; and it was used to transfer the securities (the Bancshares stock). The circuit court agreed with First National Bank that the stock power was an effective indorsement, and the indorsement transferred the shares to First National Bank as trustee. We also agree that the stock power in this case was a proper indorsement.
The stock power states:
William Campbell Ash for value received has bargained, assigned, and transferred and by these presents does set over, assign, and transfer unto First National Bank of Eastern Arkansas, Trustee of the William Campbell Ash Trust, a Irrevocable Trust under Trust document dated June 16, 2011, and established under the Last Will and Testament of Daisy Campbell Wilson[.]
This language is not reasonably susceptible to more than one meaning. Ash does not dispute that he signed the document, nor does he claim a fraud or misrepresentation occurred. In Arkansas, the general rule is that if a person signs a document, he or she is presumed to know its content. Banks v. Evans , 347 Ark. 383, 64 S.W.3d 746 (2002). We have no reason to deviate from the general rule. Moreover, when the signed stock certificate was left in First National Bank's possession the transfer as between Ash and the bank was complete. Ark. Code Ann. § 4-8-304(d) (Repl. 2001); Ark. Code Ann. § 4-8-301 (Repl. 2001) (delivery can mean possession of the security certificate by the transferee or someone else with authority).
Simply summarized, Ash's indorsement and delivery of the stock certificate and stock power transferred all his 3,881 Bancshares shares to First National Bank in its capacity as trustee of the irrevocable testamentary trust that Ash's mother had created. Because Ash has failed to show that he owned or was entitled to possess the personal property (the stock) after he signed and delivered the stock certificate and stock power to First National Bank, the circuit court correctly dismissed with prejudice Ash's conversion claim. See AMI Civ. 425 (2018) (plaintiff alleging conversion of personal property must prove that the plaintiff owned or was entitled to possess the personal property). Ash's action for replevin fails as a matter of law, too, because replevin is available only to one with the right to recover the personal property in the first place. Pettit v. Kilby , 232 Ark. 993, 342 S.W.2d 93 (1961). And that one is not Ash. First National Bank (in its capacity as a trustee) holds legal title to the shares. Ash holds a beneficial interest subject to the testamentary trust's terms and-more generally but no less important-Arkansas's law of trusts. See Lael v. Crook , 192 Ark. 1115, 97 S.W.2d 436 (1936) (trustee holds legal title; beneficiaries hold equitable interest). Because Ash no longer holds legal title to the stock shares, he cannot recover on either a replevin or a conversion claim. Consequently, *591 we affirm the circuit court's dismissal of these claims with prejudice.
B. Transfer Restrictions
The second alleged error is that the transfer violated the stock-transfer restrictions that appear on the face of certificate no. 1221 and the restrictions contained in the corporate bylaws. Here Ash wants to void the transfer by invoking the law of corporations and arguing that Bancshares of Eastern Arkansas, Inc.'s restrictions void the transfer between him and First National Bank. We are unmoved, though the point is earnestly made.
Certificate no. 1221 states that the shares are "transferable only on the books of the corporation [Bancshares of Eastern Arkansas] by the holder hereof in person or by attorney upon surrender of this certificate properly endorsed." The corporate bylaws state that "Certificates of stock shall bear the signatures of any two of the executive officers. ... Each certificate shall recite on its face that the stock represented thereby is transferable only upon the books of the Company properly endorsed." Section 4-8-204(1) states that a "restriction on transfer of a security imposed by the issuer [Bancshares of Eastern Arkansas, Inc.], even if otherwise lawful, is ineffective against a person without knowledge of the restriction unless: the security is certificated and the restriction is noted conspicuously on the security certificate." Ark. Code Ann. § 4-8-204(1) (Repl. 2001). Section 4-26-610(a)(1) (Repl. 2016) allows for the enforcement of restrictions imposed by private shareholder agreements if they "do not unreasonably restrain alienation." In fact, section 4-26-610(b) states that even reasonable restrictions on alienation are invalid unless the authority for them is set out in the articles of incorporation or the bylaws. Ark. Code Ann. § 4-26-610(b).
The problem here for Ash, as we see it, is that the stock power was a valid indorsement under Arkansas securities law. It unambiguously stated that he intended to transfer the stock shares to First National Bank (in its capacity as trustee). The law of corporations does not help Ash here because he has not shown that an unreasonable restraint upon alienation existed or why the stock power failed to comply with the specific corporate-bylaw provisions at issue. More fundamentally, the issuer (Bancshares of Eastern Arkansas, Inc.) is not trying to impose a restriction on either Ash or First National. Bancshares (the issuer) is not even a party to this case.
The circuit court correctly rejected Ash's argument that the stock transfer to First National Bank was void because some of the corporate-transfer restrictions were not properly applied. See Loeb v. German Nat'l Bank , 88 Ark. 108, 109, 113 S.W. 1017, 1019 (1908) (transfer valid as between purported transferor and transferee even if transfer did not comply with corporate bylaws because "conformity to [the by-laws] is primarily for the benefit of the corporation").
IV. Breach-of-Fiduciary-Duty Claim
The only remaining claim in Ash's complaint is that the bank breached some of the fiduciary duties that Arkansas's trust code and the common law place on trustees. In this vein, Ash presses that even if he did transfer his individual Bancshares stock shares to First National Bank, the transfer was without consideration, which in turn means that the bank has the burden to prove that the transfer was in Ash's best interest. His principal appellant's brief concludes this way: "As Will's trustee and fiduciary, the Bank bears the burden of proving that the gift benefited Will Ash, and it has not ... done so." The bank *592 responds that this argument is silenced by the law-of-the-case doctrine, is outside the scope of our mandate in Ash I, and is otherwise mistaken.
We begin by responding to First National Bank's rebuttal to Ash. As its title suggests, the law-of-the-case doctrine holds that the decision of an appellate court establishes the law a circuit court must apply on remand; the doctrine also cabins the appellate court itself if there is a subsequent appeal in the same case. Green v. George's Farms, Inc. , 2011 Ark. 70, 378 S.W.3d 715. The doctrine is not inflexible and does not absolutely preclude the correction of an error. It does, however, prevent an issue raised in an earlier appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. Harmon v. State , 2019 Ark. 34, 2019 WL 474544. The doctrine also prevents an appellate court from considering an argument that could have been raised during the first appeal but did not appear until the subsequent one. Green, supra.
Again, we did not resolve any factual issues in Ash I . And the circuit court's 2016 judgment was vacated by our 2017 mandate. All this means that the case was alive in the circuit court, the record was reopened, and the parties were free to pursue the case as they wished subject to the superintending control that the circuit court inherently maintains. We only required the parties to account for Arkansas securities law because the then purported transfer of a security was clearly at issue. Ash I , supra. We did not decide in the first appeal whether the alleged transfer was a purchase, gift, or some other type of conveyance. Nowhere were any of these issues addressed in Ash I . We did not dispose of any claims in the complaint. Consequently, Ash is not prevented from arguing, in the alternative, that if he transferred his shares to First National Bank (as trustee of the irrevocable testamentary trust), then the bank has the burden to prove that the transfer was in Ash's best interest. Ash made this argument to the circuit court on remand from Ash I , received a ruling from the court, and has raised the argument again here. So we will address it.
No party in this case has disputed that a fiduciary relationship exists between First National Bank (as trustee) and Ash (as trust beneficiary). Among other duties, a trustee has the duty of loyalty to administer the trust solely in the beneficiaries' interests. Ark. Code Ann. § 28-73-802(a) (Supp. 2017). In some circumstances, a transaction between a trustee and a beneficiary can be voided. See, e.g. , Ark. Code Ann. § 28-73-802. Ash essentially contends that the stock transfer was an unfair conveyance in the circumstances and was not in his best interest.
Three factors that some courts consider when deciding whether the trustee has shown that the transaction was fair to the beneficiary are (1) full disclosure, (2) the payment of adequate consideration, and (3) independent advice. George G. Bogert et al., The Law of Trusts & Trustees § 544 (rev. 2d ed. Supp. 2012); see also Restatement (Third) of Trusts § 78 (2007) (explaining that the trustee "must be able to show that the dealings were fair and that all relevant and material information that was known, or that should have been known ... by the trustee was communicated to the beneficiary or beneficiaries involved"). Legal and equitable remedies are available if a fiduciary breaches a duty owed to the beneficiary and harm results. Berry v. Saline Memorial Hosp. , 322 Ark. 182, 907 S.W.2d 736 (1995) ; see also Hardy v. Hardy , 217 Ark. 305, 230 S.W.2d 11 (1950).
*593 Having come to the end, and keeping the standard of review in mind, we hold that there are genuine issues of material fact on Ash's claim of whether the bank breached a fiduciary duty owed to him. Ash contended before the circuit court that his transfer was by means of a gift. Recall that Ash said during his deposition that he believed he was placing his individually held Bancshares stock into a newly created revocable trust to protect his shares from creditors, including his ex-wife. He asked for help from an attorney who may have represented both Ash and the bank at times relevant to this case. We emphasize may have , because it is not possible to conclude anything without making credibility determinations and weighing the proof in a manner that a summary-judgment review forbids. Hicky may have drafted the stock-power document and an indemnification agreement. We do not know whether Ash was fully informed about the implications of the stock-transfer transaction, including the type of trust that was receiving the intended transfer. Ash thought that he was retaining control over his transfer because he requested that the trustee either liquidate his stock or extend a loan against it. Even First National Bank's own personnel had different opinions and understandings on whether Ash's 3,881 shares were destined for the existing irrevocable testamentary trust or a new, revocable one. But once the shares went into the irrevocable trust, Ash lost the power to do with the securities as he pleased and was not able to liquidate them or vote as a shareholder. He further was not able to diversify his financial portfolio given what happened. Ash argues that because his transfer was by means of a gift, this transaction is voidable.
First National Bank argued to the circuit court that Ash transferred his stock into the irrevocable trust. It argued that Ash received a benefit from, consented to, or perhaps ratified the transaction that he now complains about. Some people believed (rightly or wrongly) that he would be better protected from creditors, and perhaps himself, too. There was no evidence that a revocable-trust document was ever prepared and presented to Ash. The attorney's-fee bill that Hicky sent to Ash does not definitively show a charge related to the creation of a new, revocable trust. And recall that Ash received K-1s based on dividend income from the Bancshares securities that were placed into the irrevocable trust, without objection, for more than one year. Ash also signed the stock certificate and the stock power without question. Yet at the same time, personnel from the bank admitted that Ash did not receive money or any other form of consideration for the transfer. The point is that important facts (and reasonable inferences) support both Ash's and First National Bank's view on the claim.
We therefore hold that a summary judgment against the fiduciary-duty claim is unsustainable on this record.
V. Conclusion
The circuit court's dismissal of Ash's conversion and replevin claims with prejudice is affirmed. The court's dismissal of Ash's breach-of-fiduciary-duty claim, however, is reversed and the claim reinstated. As then judge Benjamin Cardozo has famously written, the law holds a fiduciary to "the punctilio of an honor the most sensitive." Meinhard v. Salmon , 249 N.Y. 458, 164 N.E. 545, 546 (1928). Whether expressed as "the punctilio of an honor the most sensitive" or good faith and fair play or some other iteration of the same legal notion, we hold that genuine issues of material fact exist on Ash's alleged breach-of-fiduciary-duty claim.
*594 Affirmed in part; reversed and remanded in part.
Whiteaker and Murphy, JJ., agree.