AMERICAN NATIONAL BANK *v.* NATIONAL FERTILIZEI
COMPANY.

(*Nashville.*    December Term, 1911.)

1. **BILLS AND NOTES.** Debtor indorsing check for conditional
   payment is an "indorser" entitled to notice of dishonor,
   when.

   Where the defendant deposited with the complainant bank certain
   notes indorsed by it to secure its indebtedness to the bank,
   and, upon maturity, the maker deposited with the defendant
   certain collateral, in order to secure an extension of time,
   whereupon the defendant procured from the bank the desired
   extension; and later the maker gave the defendant a check on ˙
   another bank, which the defendant indorsed and sent to the
   complainant bank for collection and application of the pro-
   ceeds to said indorsed notes; but the check, without proper
   notice of its nonpayment, was returned to complainant partly
   unpaid for want of funds, it was *held* that the defendant was
   an "indorser" of the check, within the sense of the negotiable
   instruments law (Acts 1899, ch. 94, sec. 63), and as such was
   entitled to discharge from liability because of the complainant
   bank's failure to make proper demand and to give him notice
   of dishonor, as required by sections 71, 83, 84, 89 and 102 of said
   law, notwithstanding the fact that the defendant was, by reason
   of waiver of demand and notice, absolutely liable on the notes,
   for the conditional payment of which the check was given.
   (*Post, pp.* 331-335.)

   Acts cited and construed:  Acts 1899, ch. 94, secs. 63, 71, 83, 84,
   89, 102.

   Case cited and destinguished:  Byers v. Harris, 9 Heisk., 652.

2. **SAME.**  Notice of dishonor, but not formal protest of a check
   for nonpayment, is necessary; check defined.

   While demand of payment must be made and notice given as re-
   quired by statute, yet formal protest is not required in case

Bank v. Fertilizer Co.

of a check, because it is not a foreign bill of exchange, though it is a bill of exchange drawn on a bank payable on demand. (*Post, pp.* 335, 336.)

Acts cited and construed:   Acts 1899, ch. 94, secs. 71, 83, 84, 89, 102, 118, 185.

Case cited and approved:   Bank v. Butler, 113 Tenn., 574, 579.

3. **SAME. Notice of dishonor may be given by telephone under statute authorizing written or oral notice.**

Under the negotiable instruments law (Acts 1899, ch. 94, sec. 96) authorizing written or oral notice of dishonor, to be "given by delivering·it personally or through the mails," the notice may be given by telephone, if it be clearly shown that the party to be notified was really communicated with, that is, fully identified as the party at the receiving end of the line. (*Post, p.* 336.)

Acts cited and construed:   Acts 1899, ch. 94, sec. 96.

4. **SAME. Oral notice of dishonor of a check, given by telephone to a clerk of an indorsing commercial corporation, is not notice to the corporation.**

Oral notice of the dishonor of a check, given by telephone to a clerk of an indorsing commercial corporation, is not notice to the corporation, within the meaning of the negotiable instruments law (Acts 1899, ch. 94, sec. 97), authorizing the giving of notice "either to the party himself or to his agent in that behalf," especially where it does not appear that such clerk had communicated such notice to any one connected with the management of the business of the corporation. (*Post, pp* 336, 337.)

Acts cited and construed:   Acts 1899, ch. 94, sec. 97.

5. **SAME. Debtor not injured for want of notice of dishonor of check indorsed as conditional payment is not entitled to credit on indebtedness.**

Where a check or other negotiable paper is indorsed by the debtor to the creditor as conditional payment (or as collateral security)

Bank v. Fertilizer Co.

of the indebtedness, the indorser will be released from lia-
bility through the failure of the indorsee creditor to give notice
of the dishonor of the indorsed paper; but the original debt
will not be discharged, except to the extent injury has occurred
by reason of the holder's negligence in failing to give notice of
dishonor, and where it is shown that no injury resulted to the
debtor by reason of such negligence, he will not be entitled to
credit on his indebtedness for the amount of the unpaid check
or other negotiable paper so indorsed. (*Post, pp.* 337-341.)

Cases cited and approved: Word v. Morgan, 5 Sneed, 79; Better-
ton v. Roope, 3 Lea, 215; Harper v. Bank, 12 Lea, 678; Kirk-
patrick v. Puryear, 93 Tenn., 409; Swinyard v. Bowes, 5 Maule
& S., 62; Bridges v. Berry, 3 Taunt., 130; Hunter v. Moul, 98
Pa., 13; Jennison v. Parker, 7 Mich., 355; Anderson v. Timber-
lake, 114 Ala., 377.

Case cited and distinguished: Coleman v. Lewis, 183 Mass.,
485.

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—JOHN ALLISON, Chancellor.

JNO. M. GAUT and J. S. PILCHER, for complainant.

W. H. WILLIAMSON, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This bill was filed against the fertilizer company and
several individuals, its stockholders, who had guaran-

teed an indebtedness owing by the fertilizer company to the bank. The suit was brought to obtain a recovery on three notes of $4,000 each and one note of $3,726.60 There were certain credits upon these notes, which are not in controversy. A judgment was rendered in favor of the complainant for $13,938.77, which sum included interest and attorney's fees provided for in the note.

The defendant claims it was entitled to a credit of $5,000 and the percentage of attorney's fees applicable to this sum. This $5,000, including the attorney's fees and interest applicable thereto, aggregated, at the time the judgment was rendered below, the sum of $7,015.54. The appeal was prayed only as to this part of the decree.

The $5,000 item claimed as credit arose under the following circumstances: The fertilizer company had obtained a line of credit amounting to $50,000 with the coplainant bank. From time to time it had transferred to the bank, in substitution for this liability, sundry notes held by it upon its customers. Among these notes were those sued on and others, which had been executed by one J. C. Cooper to the fertilizer company, and by it indorsed to the bank. Each of these notes contained on its face a provision for waiver of demand and notice, so that, when the fertilizer company indorsed them to the bank, it became absolutely liable thereon. These notes matured, and the bank became urgent for payment. The fertilizer company in turn urged Cooper to make payment. In this state of affairs Cooper transferred as collateral to the fertilizer company sundry shares of stock which he owned in another corporation. A paper was

executed, stating the terms under which the collateral was given. The substance of this paper was that Cooper was to pay to the fertilizer company certain sums on dates specified, and the fertilizer company was itself to grant, and also to secure from the bank, an indulgence according to these dates. In case default should occur on any of these collateral payments, and should continue for ten days, it was provided that all of the notes should again become due, and the fertilizer company would have the right to advertise and sell the collateral. One of the special payments provided for was for $5,000, to be made on May 20, 1908. As a means of making this payment Cooper delivered to the fertilizer company his check as follows:

"Athens, Ga., May 29, 1908.
"The Georgia National Bank, of Athens, Georgia:

"Pay to the order of National Fertilizer Company, $5,000, five thousand and no hundred dollars.

J. C. Cooper."

This was indorsed:

"Pay to the order of American National Bank.

National Fertilizer Co.,

"By E. W. Connel, Treasurer."

Following this:

"Pay to the order of American National Bank, Nashville, Tenn.

"N. P. Le Sueur, Cashier."

The indorsement made by the fertilizer company to the complainant bank was for the purpose of conditional payment; that is, when the check should be collected by

the complainant, the proceeds were to be applied in payment that far upon the notes now sued on.

The complainant bank sent the check to the bank on which it was drawn. No funds were in that bank to meet it, but Cooper promised that bank that he would place funds with it to meet the check, and gave it certain drafts on third parties from which to obtain the money. The complainant bank was promptly notified by the Georgia bank of the condition of affairs at that end of the line, and authorized the Georgia Bank to indulge Cooper, with a view to making the collection out of the drafts which Cooper had placed in that bank. The sum of $2,000 was in fact realized on those drafts by the Georgia bank, but no more. About thirty days having elapsed in the meantime, the Georgia bank was instructed to return the paper, and did so.

The fertilizer company insists that it was entitled to notice of the failure of the Georgia bank to pay the check, and, having received no notice, it was discharged from the check, and likewise from that amount of the notes sued on. The complainant bank insists that it gave due notice, but that, if it has failed to prove this, nevertheless defendant is not entitled to credit on the notes on which the suit is brought, even if it was released from liability on the check, on which no suit has been brought. The evidence upon the subject of notice will be stated further on.

Complainant insists that the fertilizer company was not a true indorser in the sense of the commercial law, with the obligation, rights, and duties of one occupying

that relation, but that it indorsed simply for the purpose of transferring title; that the check really belonged to the complainant, to be credited on a debt due it when collected; hence that the rule insisted upon by the fertilizer company concerning the effect of a failure to give notice on paper transferred as conditional payment does not apply. Reference is made to the case of *Byers* v. *Harris*, 9 Heisk., 652. That was a case in which a factor had sold goods for his principal, and, as a means of making payment, he, pursuant to the ordinary course of business between the two, purchased a draft on New York from a bank in Memphis, having the draft made payable to himself, and indorsing it to his principal. Before the paper was presented for payment in New York the Memphis bank failed and was without funds to meet it. The owner of the draft caused it to be protected, with a view to holding his factor liable on his indorsement, and, on the latter's refusal to pay, subsequently sued him. It was held that the indorsement was without consideration, and merely for the purpose of transferring title, which the factor held really as agent of his principal, and that he was not liable. There are numerous cases to support this principle. The present case, however, does not fall under these authorities. Under the facts stated it is perceived that, while the fertilizer company was acting with the full consent of the bank in granting the extension, it was not acting as agent of the bank, but on its own initiative, and for the purpose of protecting its own liability. It then had a beneficial interest in the check, and had control of it.

There was no contract that this check should be turned over to the American National Bank. The fertilizer company had the power to place it for collection in any other bank, or put it in any other channel for collection, that it deemed proper. Having this interest and power when it indorsed the check to the American National Bank, it was in the same situation in respect to it which it would have occupied if the check had been drawn from any source whatsoever. In other words, it was merely paper owned by the fertilizer company, which it indorsed to the bank, to be collected and applied by the latter on the notes which the fertilizer company, by a fixed liability, owed the bank; that is, as a conditional payment on those notes. The fertilizer company was therefore an indorser within the sense and meaning of section 63 of the negotiable instrument law, which reads: "A person placing his siganture upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." The rights of the fertilizer company were therefore to be measured by those of indorsers generally. "A check is a bill of exchange drawn on a bank payable on demand." Section 185; *Unaka National Bank* v. *Butler*, 113 Tenn., 574, 579, 83 S. W., 655. The indorser was entitled to have demand made in reasonable time, and on refusal of payment to have notice of dishonor, in default of which he would be discharged. Section 89; section 71; section 83; section 84; section 102. While demand must be made as stated, and notice

given, formal protest is not required in case of a check, because it is not a foreign bill of exchange. Section 118, ch. 94, Acts of 1899.

The complainant insists that notice was given. This is denied by defendant. The treasurer of the company, Mr. E. W. Connel, who made the indorsement for the fertilizer company, testifies unequivocally that no notice was received by him. Mr. Rhea, the president, testifies to the same effect. Mr. Le Sueur, the cashier of the bank, says that he gave notice by telephone. According to section 96 of the negotiable instrument law the notice may be "in writing or merely oral," and may "in all cases be given by delivering it personally or through the mails." We are of the opinion that a notice by telephone would fall within the meaning of this section, if it be clearly shown that the party to be notified was really communicated with; that is, fully identified as the party at the receiving end of the line. In this case, however, Mr. Le Sueur is not clear that he ever held any communication with Mr. Connel. He testifies that his talks were with a clerk, whose name is not given; that he had several conversations with this clerk, in which he left word for Mr. Connel, and he *thinks* he succeeded one time in getting Mr. Connel. It is evident, however, in his testimony that he is not confident in this belief, while Mr. Connel is positive that he did not receive notice at all. It is said in section 97 that notice of dishonor may be given "either to the party himself or to his agent in that behalf." We do not undertake to define the meaning of the expression "agent in that be-

half." We are of the opinion, however, that notice to a clerk, under the facts stated, would not be sufficient; it not appearing that he had communicated such notice to any one connected with the management of the business.

Under the facts stated the fertilizer company was undoubtedly discharged from liability on the check. The question now to be determined is whether this discharge entitled it to a credit for the amount of the check on the notes sued on; the check, as stated, having been indorsed as a conditional payment on these notes.

In Daniel on Negotiable Instruments, section 971, it is said: "So absolute is the necessity for notice to an indorser in order to charge him that, if a note has been indorsed to the holder in conditional payment of a debt, the failure to give notice to the indorser will not only discharge the indorser as a party to the note, but also as a debtor upon the original consideration, even though it be secured by a mortgage or deed of trust. The note, then, is made an absolute discharge of his liability, and the indorsee must look solely to prior parties. And so in respect to the drawer of a bill given in conditional payment. The neglect to give notice to the drawer of a renewed bill, not only discharges him from liability to pay that bill, but discharges him from liability to pay the prior bill, to satisfy which it was drawn; and this, although it be expressly agreed that the taking of such second bill shall not exonerate any of the parties to the first bill until actual payment." To the same effect are Byles on Bills, par. 230; Tiedeman on Commercial

125 Tenn.—22

Paper, 334. In Edwards on Bills and Promissory Notes, section 647, it is said: "The law on this subject is founded on a reason of public expediency. There is nothing more important than that, in questions of a general mercantile nature, there should be a uniformity of decision; and although the justice and equity of the rule requiring notice may not in some cases be perceived, where the payee has purchased a bill, and it is drawn in good faith, and no conceivable loss has happened by the want of notice; yet, as there may be cases where, though there were no funds in the hands of the drawee, the drawer may be injured by the want of notice, it is better that the rule on the subject should be general and uniform throughout the mercantile world."

It is insisted in behalf of complaint that the rule stated in the passage quoted from Daniel on Negotiable Instruments does not apply in a case where it is affirmatively shown that the person making the conditional payment has received no detriment from the want of strict presentment and notice; that is, in such a case the principal demand is not extinguished.

The subject is discussed in an extended note to *Coleman* v. *Lewis* (Mass.), 68 L. R. A., 482-492. In *Coleman* v. *Lewis*, 183 Mass., 485, 67 N. E., 603, 68 L. R. A., 482, 97 Am. St. Rep., 450, a distinction is taken between indorsements made by way of conditional payment and those made by way of collateral security. Speaking to this subject it is said in that opinion: "The rule invoked by the defendant is a rule which obtains when a note is taken as conditional payment of a debt. In such

Bank v. Fertilizer Co.

case the condition on which the note is given and accepted is that it shall be duly presented for payment, and that if it is not so presented, and due notice of its dishonor given, the payment will become absolute. The rule is a rule of the common law, and was set forth in section 7, 3 and 4 Anne, c. 9, which was enacted to remove all doubts as to promissory notes being within the custom of merchants. It is there provided that, 'if any person accept a bill of exchange, for or in satisfaction of any former debt,' the same shall be esteemed a full and complete payment if such person 'doth not take his due course to obtain payent thereof by endeavoring to get the same accepted and paid and make his protest as aforesaid either for nonacceptance or nonpayment thereof.' . . . But we are of opinion that, where a notice is given as collateral security, the doctrine that a failure to present and give notice of dishonor operates as payment does not apply. In such a case the loss of an indorser's liability through failure on the part of the pledgee to present the note for payment and to give notice of dishonor to the indorser is material, when the defendant undertakes to recover damages for the negligence of the pledgee in his care of the collateral committed to his charge, or to set up those damages in recoupment."

It is shown in the note referred to that the distinction above mentioned is not kept up in the cases; rather that in some of the cases it is held that the rule as to conditional payment strictly obtains, and in others it is held both in this class of cases and those where collateral se-

curity is given, that the original debt is not discharged unless it be shown that injury has occurred. Both English and American cases are cited as holding that both classes of cases are subject to the same rule. *Swinyard* v. *Bowes,* 5 Maule & S., 62; *Bridges* v. *Berry,* 3 Taunt., 130; *Hunter* v. *Moul,* 98 Pa., 13, 42 Am. Rep., 610; *Jennison* v. *Parker,* 7 Mich., 355; *Anderson* v. *Timberlake,* 114 Ala., 377, 22 South., 431, 62 Am. St. Rep., 105. Cases are also cited showing that the rule in both instances is that the original debt is discharged by default of the holder in making demand and giving notice. We need not undertake, in the present case, to settle the conflict, since in our own State we think the matter is already settled by our decisions. *Word* v. *Morgan & Co.,* 5 Sneed, 79; *Betterton* v. *Roope,* 3 Lea, 215, 31 Am. Rep., 633; *Harper* v. *Bank,* 12 Lea, 678; *Kirkpatrick* v. *Puryear,* 93 Tenn., 409, 24 S. W., 1130, 22 L. R. A., 785. No distinction is taken in these cases between paper transferred as collateral security and that which is used as conditional payment. The same rule is applied to both; that is, that the original debt will not be held discharged, except to the extent injury has occurred by reason of the negligence of the person holding the paper. The last case referred to was one of conditional payment. It was held that failure to exercise due diligence in the matter of presentation for payment and notice of dishonor not only discharged the indorser from the paper on which the default occurred, but *prima facie* from the original debt on which it was to be applied, and that the burden of proof would rest upon the plaintiff,

Bank v. Fertilizer Co.

suing on the principal debt, to show that no injury had resulted to the debtor by reason of his negligence in respect of the paper transferred as conditional payment.

In the case now in judgment it is shown that no injury resulted from complainant's failure to give notice. The chancellor, therefore, acted correctly in rendering judgment for the whole amount.

Affirm the judgment.