## COUNTS v. BURNS. (No. 10126.)

(Court of Civil Appeals of Texas. Fort Worth. March 10, 1923.)

**1. Judgment ⬤⟳248—Must be based on both pleading and evidence.**

A judgment is sustainable only when it has a proper basis in both pleading and evidence.

**2. Judgment ⬤⟳255—Finding on issue not supported by any evidence does not authorize judgment.**

In an action on a note, where defendant alleged, in one count of his answer, that he had indorsed and transferred to plaintiff two notes payable to defendant, in part payment of the note sued on, and, in another count, that such notes were assigned as additional security for payment of that sued on, that plaintiff promised to collect them, but failed to do so or to notify defendant, as indorser, under Negotiable Instruments Act, § 1, of their nonpayment, as required by sections 89, 102, and 103, but the only evidence was in support of the latter count, the court erred in rendering judgment on the jury's finding that the notes were not delivered as part payment for the property for which the note sued on was given.

Appeal from District Court, Young County; W. E. Forgy, Special Judge.

Action by W. C. Burns against S. C. Counts. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Brown & Graham, of Graham, for appellant.

Marshall & King, of Graham, for appellee.

CONNER, C. J. The appellee Burns instituted this suit in the district court of Young county against the appellant, Counts, upon a promissory note in the sum of $3,000, payable in monthly installments of $100 each, and to foreclose the vendor's lien on the north 25 feet of lot 7, block 22, in the town of Graham. The plaintiff alleged that defendant had failed and refused to pay the installments due, and that he elected to declare the whole sum due, as was provided in the note.

The defendant answered, admitting the execution of the note as declared upon by the plaintiff, but in one count alleged that at

the time of its execution he had, in part payment thereof, indorsed and transferred to the plaintiff two notes payable to the defendant of $500 each, signed by one D. T. Wilson, and secured by a lien on certain property in the town of Ranger, and that by reason thereof nothing was due upon the plaintiff's note, and that hence the plaintiff's suit had been prematurely instituted. In another count the defendant set up the indorsement and transfer to the plaintiff of the two notes described in the first count, but alleged that they had been so assigned to the plaintiff as additional security for the payment of the $3,000 note; that plaintiff at the time of such assignment promised to collect the two $500 notes, but had failed to do so, and had failed to notify him of their nonpayment.

The case was tried before a jury and submitted upon a single issue, which was answered by the jury in the negative, to wit:

"Were the two notes given by D. T. Wilson to S. C. Counts dated February 4, 1921, for $500 each, and due on or before 60 and 90 days from date, respectively, sold and delivered by the defendant, Counts, to the plaintiff, Burns, as a part payment for the property described in plaintiff's petition?"

Upon the negative answer to the issue so submitted, the court entered judgment for the plaintiff as prayed for, and the defendant has duly prosecuted this appeal.

Appellant assigns as error the action of the court in refusing to submit special issues to the jury seeking to elicit findings of whether the two notes of $500 each had been placed with the plaintiff "to be held by him as collateral security," and whether the plaintiff, Burns, had agreed "to try to collect said notes," and whether the plaintiff, Burns, had used "proper diligence in trying to collect said notes."

There is no dispute in the facts. It is agreed that at the time of the delivery of the deed by Burns to Counts the latter indorsed and delivered to Burns the two $500 notes described in his answer, dated February 4, 1921, due on or before 60 and 90 days, respectively, from their dates, payable to S. C. Counts or order, bearing interest at the rate of 6 per cent. per annum, payable at Ranger, Tex., and secured by a mortgage on the Homestead Hotel in the city of Ranger and all furniture therein for 16 rooms, and all interest upon the leasehold upon which the hotel is located, and providing for the usual 10 per cent. attorney's fee in case of suit; that, had the notes last referred to been paid and applied on the indebtedness, Counts would not be in default in his payments on the note sued upon by the plaintiff at the time of the filing of the suit.

The defendant, Counts, testified:

That said notes (the two $500 notes above referred to) "were delivered to the said W. C. Burns as collateral security for the payment of his note, as set out in deed above referred to, and that the said Burns agreed to collect said notes and apply the proceeds on the installments due from Counts to Burns, and that the said Counts was not notified of any dishonor of said notes, or that they were not paid until about the time that he was notified that his property would be sold under the deed of trust, which was the 6th day of July, 1921, and that the said notes were worth their face value at the time of delivery of same to said Burns and at their maturity, and were collectable at the time same were due and were secured as shown in said notes."

The plaintiff, Burns, testified relative to said notes (the two $500 notes described in defendant's answer):

"That the notes were sent to a Ranger Bank for collection one time, and that said notes were soon after returned unpaid. That he notified said Counts that same were returned unpaid, and that this was long prior to the posting of notices to sell under the deed of trust, to wit, the 6th day of July, 1921."

It is apparent, we think, from the record that the case was disposed of upon a mistaken theory of the evidence. The judgment, after reciting the call of the case, the appearance of the parties, and their counsel, and the announcement of ready for trial by the parties, and after the selection and qualification of the jury, and of the submission of the issue hereinbefore noted, and the answer of the jury, recites that:

"And it appearing to the court from the finding of the jury as aforesaid that the plaintiff, W. C. Burns, is entitled to recover his debt, interest, and attorney's fee as prayed for, and that the defendant is indebted to the plaintiff in the sum of $2,826, being the balance due on said note, and that the note sued on bears interest at the rate of 8 per cent. per annum. * * * It is therefore ordered, adjudged, and decreed by the court that the plaintiff, W. C. Burns, do have and recover of and from the said defendant, S. C. Counts, the said sum of $3,295.11, as principal, interest, and attorney's fees thereon, together with his costs in this behalf expended."

The judgment further foreclosed the lien declared upon by the plaintiff, ordered the sale of the property, etc.

[1, 2] While the defendant in one count of his answer did allege that the Ranger notes, as we shall refer to them for the sake of brevity, had been assigned to the plaintiff as part payment of the $3,000 note executed by the defendant, we do not find in the agreed statement of facts, or in the testimony of the parties which we have noted, or otherwise in the record, a word of testimony to support that allegation. The evidence, and the only evidence on that issue, is to the effect that the notes were assigned and delivered to the plaintiff as security, so that

the judgment, resting, as it was made to rest, upon the single finding of the jury, is fundamentally erroneous. A judgment is sustainable only when it has a proper basis in both pleading and evidence. Not only was there a want of evidence raising the issue submitted to the jury, but the only evidence relating to the subject was that which was relevant to the issues which the defendant requested to be submitted, and we think the court erred in refusing to submit them.

There is no denial of the fact that the Ranger notes, payable to appellant, were negotiable, and that he was an indorser thereof, under section 1 of our Negotiable Instruments Act. See article 6001a1, Complete Texas Statutes 1920, and American National Bank v. Fertilizer Co., 125 Tenn. 328, 143 S. W. 597. Section 89 of the Negotiable Instruments Act declares that:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Section 102 provides that:

"Notice may be given as soon as the instrument is dishonored; and unless delay is excused as hereinafter provided, must be given within the time fixed by this act."

The time within which notice must be given is thus stated in section 103 of the Act:

"Where the person giving and the person to receive notice reside in the same place, notice must be given within the following times:
"1. If given at the place of business of the person to receive notice, it must be given before the close of business hours on the day following.
"2. If given at his residence, it must be given before the usual hours of rest on the day following.
"3. If sent by mail, it must be deposited in the post office in time to reach him in usual course on the day following."

It is said in Daniel on Negotiable Instruments, § 971:

"So absolute is the necessity for notice to an indorser in order to charge him that, if a note has been indorsed to the holder in conditional payment of a debt, the failure to give notice to the indorser will not only discharge the indorser as a party to the notes, but also as a debtor upon the original consideration, even though it be secured by a mortgage or deed of trust. The note, then, is made an absolute discharge of his liability, and the indorsee must look solely to prior parties. And so in respect to the drawer of a bill given in conditional payment. The neglect to give notice to the drawer of a renewed bill not only discharges him from liability to pay that bill, but discharges him from liability to pay the prior bill, to satisfy which it was drawn; and this, although it be expressly agreed that the taking of such second bill shall not exonerate any of the parties to the first bill until actual payment."

In 21 R. C. L. p. 667, par. 30, the following is said:

"The rights and duties of parties to a pledge of securities for the payment of a debt may of course be fixed by agreement as to the manner in which they are to be collected, but as a general rule not only is it the right of the holder of a collateral security to collect the money thereon and apply it to the principal debt, but his duties in this respect are active, and he is bound to ordinary diligence to preserve the legal validity and pecuniary value of the pledge, and if by negligence, wrongful act or omission on his part loss is sustained, it must be borne by him. If the person with whom negotiable paper is left as collateral security neglects to make presentment thereof when due, or fails to give due notice to bind the parties to it, or does not use due diligence in making the collection, so that by reason of his neglect the paper becomes worthless, it is generally held that he will be liable for the loss of the pledgor."

A case very closely in point is that of Larkin v. Dawson, 37 Tex. Civ. App. 345, 83 S. W. 882, by the Court of Civil Appeals at San Antonio. That was a case in which the defendant at the time he executed a note sued upon deposited with the plaintiff a note of a third person as collateral security, and at the time such collateral note matured the maker was amply able to pay the same, but the plaintiff was negligent in failing to collect it, and the amount thereof was lost by the maker's subsequent insolvency. It was held in an opinion by Mr. Justice Fly, now Chief Justice, that the plaintiff was liable to the defendant for the amount of the collateral note less the amount of defendant's note for which it was pledged. It was there said that the pledgor was relieved of the responsibility of the collection of the collateral note, the holder having been vested with the legal title and being entitled to receive payment. And it seems that the burden of proof was upon him in event of a negligent failure to collect to show that no loss resulted from his negligence. See American National Bank v. Fertilizer Co., 125 Tenn. 328, 143 S. W. 597; Kirkpatrick v. Puryear, by the Supreme Court of Tennessee, 93 Tenn. 409, 24 S. W. 1130, 22 L. R. A. 789, and cases cited in notes.

We conclude that the judgment below should be reversed, and the cause remanded for another trial not inconsistent with this opinion.